MARSTON v. FRISBIE.　(No. 7535.)

(Supreme Court, Appellate Division, First Department.　July 9, 1915.)

1. LANDLORD AND TENANT ☞164—REPAIRS—DUTY TO MAKE.

　　A landlord, in the absence of agreement, need not repair, and liability to make repairs cannot be predicated on a mere promise, although, if he attempts to make repairs and is negligent, the tenant, if the negligence increases the danger, may recover for injuries.

　　[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. ☞164.]

2. LANDLORD AND TENANT ☞164—REPAIRS—NEGLIGENCE.

　　Where a landlord, who was not bound to make repairs, sent his agent to repair a step, and the agent merely drove a few nails into a brick wall,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which the tenant discovered soon loosened, the tenant cannot recover for injuries received upon the turning of the step; the landlord's negligence not having increased the danger.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. ☜164.]

Appeal from Bronx County Court.

Action by Sarah Marston against Benjamin F. Frisbie. From a judgment for plaintiff, and an order denying new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Gustav Gunkel, of New York City, for appellant.
Louis Salant, of New York City, for respondent.

LAUGHLIN, J.  In the month of November, 1912, the plaintiff rented and took possession of the house known as 435 East 164th street, borough of the Bronx, New York, under a verbal agreement with defendant, who owned it, by which she became a tenant from month to month at a rental of $20 per month, and according to the testimony of the defendant he was to and did make all necessary repairs.  It was a 1½-story frame house, with a basement, and had been built about 60 years.  The kitchen was in the basement, and access thereto was obtained by descending a flight of steps from the front yard.  The greater part of the surface of the front yard was paved.  The opening for the stairway extended out from the house about 3 feet, and was 4 feet in length along the side of the house. The first landing was from 12 to 17 inches below the surface of the yard, and it extended 3 feet out from the house and 4 feet along it, and was paved with brick.  From this landing steps led down along the side of the house to the basement entrance.  Some five or six years before the accident, a wooden box or step had been placed on this landing by the authority of the defendant to form a step from the surface of the yard to the landing.  The evidence tends to show that the box step was from 22 inches to 4 feet long, about a foot in width, and 4 or 5 inches high, and it was placed in the angle formed by the line of the inner side of the front wall of the area leading into the basement and the landing.  The evidence is not clear either with respect to the condition of the box originally or the manner in which it was secured, and some of the witnesses testified on this subject by indicating by objects in the courtroom.  The fair inference from the evidence is, however, I think, that a box without a top was used, and was placed with the open top against the wall toward the street, and that it was fastened by driving nails into the mortar between the brick or stone at the sides and in the landing.  There is evidence that the side of the box underneath had rotted away, and tending to show that the box step became loose and would turn over when stepped on.

On the part of the plaintiff, who was 64 years of age, evidence was given tending to show that on the 4th day of December, 1913, while she was endeavoring to descend from the yard into the basement, and

in the act of using this box step, it turned and she fell, sustaining injuries for which she has recovered; that the defendant's brother, who was his duly authorized agent in the premises, was duly notified of the condition of the box step prior to the accident, and that in the first week of the month of November, and after such notice, defendant called at the premises and borrowed a hammer of plaintiff, and attempted to secure the box step by driving some nails in the mortar, but that thereafter it became somewhat loose again, and she was aware of this prior to the time of the accident. Plaintiff's testimony also tends to show that the box step had not become entirely loose again prior to the accident, but that she was aware of the extent to which it had worked loose.

The plaintiff alleged that it was the duty of the defendant to keep the premises in repair, and, further, that the defendant voluntarily undertook to repair the steps, and made the repairs in an unskillful, unworkmanlike, and negligent manner, and left the step in a defective, imperfect, and dangerous condition, and that the accident was caused by reason of the defective, imperfect, and dangerous condition of the step, due to the unskillful, unworkmanlike, and negligent manner in which it was repaired by the defendant. The attorney for the plaintiff, in opening the case, stated that he proceeded upon the theory that the repairs were made in an unskillful and unworkmanlike manner, and that such was the theory of the complaint, and at the request of the attorney for the defendant he stated, in effect, that he would proceed solely on the ground of negligence in making the repairs. The defendant, however, testified, in substance, that his brother, acting for him, "was to make all repairs" for plaintiff as a tenant, and defendant's brother testified that on three occasions he made repairs on the premises.

The court in the main charge instructed the jury that it was the duty of the landlord to keep the premises in repair, and that plaintiff's claim was that defendant, on being notified of the defective condition of the step, undertook to repair it, but made the repairs in an unworkmanlike, defective, and negligent manner, and as the result of which she sustained the injuries, and further charged that plaintiff claimed that defendant was negligent "in maintaining those premises in the particular regard directly referred to in the testimony, namely, in maintaining this step in a defective condition, because, as you recollect, the plaintiff's contention is that this oblong box or step was insecurely fastened," and instructed the jury that it was the duty of the defendant to maintain every part of the premises "in a reasonably safe and secure manner, with due regard for the limb and the life, and the health of the persons residing there as tenants."

At the close of the charge in chief, the attorney for the defendant duly excepted to the instruction that it was the duty of the defendant to maintain the premises in a reasonably safe condition, and thereupon the court instructed the jury that, if they believed that the defendant "was under a duty to take care of those premises, then he is responsible," and exception was duly taken to this further instruction. The court then instructed the jury, at the request of attorney for the defendant, that the landlord could not be held liable for fail-

ing to make repairs, even if they were necessary and he expressly promised to make them, that where a landlord undertakes to make repairs "he is liable only for his active and direct negligence with regard to the subject-matter of his undertaking," that his negligent act must be the real cause of the injury, and that the rules concerning liability arise where the landlord actively interferes with the premises and such action on his part causes the accident, and where the landlord leases a whole house he would not be responsible if the tenant fell into a hole in an alleyway which the landlord had not attempted to repair, and would only be liable if he entered on the premises, dug up the alleyway, and made the hole. The court further charged that if the defendant, in making the repairs, did not add to the danger, he was not liable. The jury were also instructed that if the plaintiff knew the condition of the step, and could have avoided falling if she had looked before stepping, and failed so to do, she was guilty of contributory negligence and could not recover.

[1] The learned counsel for the respondent endeavors to sustain the recovery on the theory that the jury must have found that the defendant was negligent in repairing the step and made it more dangerous, and that the injuries sustained by plaintiff were directly due thereto. No claim is now made that any duty devolved on the landlord to keep the premises in repair or to repair the step. The rule is well settled that the landlord, in the absence of an agreement to make repairs, is under no obligation so to do, and that liability cannot even be predicated on his promise to repair, which in such circumstances is without consideration, and the only theory on which there could be liability is that, having volunteered to repair, he was negligent with respect to the repairs he attempted to make, and increased the danger, and that the damages were the direct result of his acts. Wynne v. Haight, 27 App. Div. 7, 50 N. Y. Supp. 187; Zelzer v. Cook, 62 Misc. Rep. 471, 115 N. Y. Supp. 173; Salvetta v. Farley, 123 N. Y. Supp. 230; Blake v. Fox, 17 N. Y. Supp. 508; 24 Cyc. 1116, 1117. The learned counsel for the appellant contends that, since the landlord was under no obligation to make the repairs, it cannot be maintained on this evidence that his efforts in attempting to secure the step resulted in making it more dangerous and caused the injuries to the plaintiff.

[2] I am of opinion that a recovery cannot be sustained on the theory on which the question was finally submitted to the jury. The defendant, on the theory that he was under no obligation to make repairs, would not have been liable, if he had left the box step entirely loose and the plaintiff had been injured while using it in that condition. The evidence does not show, or justify an inference, that what the defendant did, if anything, in attempting to secure the box step, rendered it more dangerous. On the contrary, the evidence on the part of the plaintiff indicates that the box step was made more secure by the acts of the defendant. Since the defendant was under no obligation to repair the step, and what he did in the premises was purely voluntary, he could only become liable if the accident resulted from his acts. Perhaps the recovery might be sustained, if it had been the duty of the defendant, in undertaking to repair the step, to make

it secure, or at least reasonably safe. But I think that was not his duty, for, being under no obligation to repair, he should not be held liable merely for having commenced the repairs, or attempted to repair, if the step was not rendered more unsafe by what he did, or the plaintiff was not misled thereby. He gave her no assurance with respect to the safety of the step or the effect of his acts thereon; and there is no evidence that she was led to believe that the step was firmly fastened and omitted any precaution for her safety that she might otherwise have taken. He merely borrowed her hammer and drove some nails in an endeavor to secure the step, and she knew before the accident that it had again worked loose to some extent, at least. The plaintiff, therefore, failed to establish a cause of action.

It follows that the judgment and order should be reversed, and verdict set aside, and complaint dismissed, with costs to appellant. Settle order on notice. All concur.