SORENSON *v.* KALAMAZOO AUTO SALES CO.

1. LANDLORD AND TENANT — DEFECTIVE PREMISES — ELEVATORS — STATUTORY DUTY OF LANDLORD.

Where the owner of a garage building leased it with an automatic gate on the elevator properly installed, and later agreed to pay for the material and labor required to widen the doors of the elevator, the work to be done by an expert engaged by the tenant from time to time, who was making some repairs at the time the doors were widened, he did not thereby reassume control of the elevator and reassume the duty cast upon him by the statute (section 12, Act No. 285, Pub. Acts 1909, 2 Comp. Laws 1915, § 5333).

2. SAME.

But if it be conceded that he would be liable during the progress of the work he assumed to pay for, his liability ceased on the completion of the work.

3. SAME.

Where plaintiff was injured by driving into an unguarded elevator pit in a garage, and he brought suit against the tenant by whose invitation he was upon the premises, and the owner of the building, as joint defendants, and the tenant, through its employee, knew, or should have known, of a defect in the working of the automatic gate, it, and not the owner of the building, whose work upon the elevator was finished, was liable for the accident.

4. SAME—INDEPENDENT CONTRACTOR.

As between the owner of the building and the repairman, the latter was an independent contractor; the evidence showing that the owner neither exercised, nor retained the right to exercise, any control over the repairman in his method of producing the result agreed upon.[1]

MOORE and FELLOWS, JJ., dissenting.

Error to Kalamazoo; Weimer, J. Submitted February 1, 1918. (Docket No. 179.) Decided June 3, 1918.

Case by Carl Sorenson against the Kalamazoo Auto Sales Company and William D. Watkins for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed as to defendant sales company, and reversed as to defendant Watkins.

*Alfred J. Mills,* for appellant sales company.

*Harry C. Howard,* for appellant Watkins.

*Mason & Sharpe,* for appellee.

FELLOWS, J. (*dissenting*). Plaintiff is engaged in business at Shelby in Oceana County. Defendant Kalamazoo Auto Sales Company operates a garage at Kalamazoo in a building owned by defendant Watkins and wife. This building was erected for the sales company and turned over to it under a lease executed in 1914. It consisted of two stories and a basement. The ground floor was taken up by the office, oil room, wash rack, stock and accessories, and storage room for regular customers. The second floor was used as a

---

[1]See notes in 65 L. R. A. 855; 66 L. R. A. 154.

workshop where several workmen were employed in repair work, and, it is fairly inferable, was used for the storage of transient cars. There was an elevator in the building large enough to accommodate an automobile, and no question is raised but that it was in proper working order and properly equipped with an automatic gate when the building was turned over to the sales company. There was no agreement in the lease requiring the owners to make repairs. The sales company employed a Mr. McNally to inspect the elevator from twice to three times a month, and on at least one occasion he did some repair work on it. Shortly before the happening of the accident the automatic gate was out of repair; it had to be raised and lowered by hand; one witness stated that it had been broken. The State factory inspector recommended, we do not understand he ordered, that the opening be made wider. He called attention of the sales company to it. The company expressed a willingness to pay for ordinary repairs, but were unwilling to pay for the widening of the opening, for making it nine inches wider as recommended by Mr. McNally. Mr. McNally then called up defendant Watkins and Mr. Watkins came down to the garage and met him. He explained to him that the gate was not working, the willingness of the sales company to pay for repairs to the gate, but its unwillingness to pay for the widening of the opening, told him his recommendation and Mr. Watkins told him to go ahead with the work and that he would pay the extra. McNally did go ahead with the work and defendant Watkins paid the bill rendered him, a portion of which was for material and the balance for the work by the hour. A job price was not fixed or paid. McNally was engaged in this work the 26th of June, 1916, the date of the accident, and he gives testimony tending to show that he had the gate in working order and went out of the garage to get

some screws, and a weight and rope to be put on to relieve the strain on the cams and post. From other parts of his testimony the jury would be justified in inferring that the gate was not in working order when he left it. The accident occurred during McNally's absence.

On the day in question, plaintiff, his wife, daughter, and a friend of the family, a Mr. Kenfield, drove from Shelby to Kalamazoo in plaintiff's automobile, arriving there in the afternoon. He had not owned the car very long and was not an experienced driver; Mr. Kenfield was, and upon reaching Kalamazoo or shortly before, he took charge of the machine and did the driving from there on. Before reaching the garage the ladies had left the automobile and plaintiff and Kenfield drove into the garage, occupying the front seat. They claim they drove inside the door and stopped and an attendant came out of the office and they inquired if they could get storage and were told they could, and were directed to drive onto the elevator as soon as a car ahead of them got out of the way; that the gate of the elevator was up and the entrance open, indicating that the floor of the elevator was there; that when the car ahead got out of the way the attendant stood by the elevator as though expecting them to drive on; that it was quite dark inside the garage, it having rained shortly before they reached it, and but one light was burning; that the car ahead drove on to the wash rack, and they carefully and slowly drove ahead as directed into the elevator opening. That the shaft of the elevator was not in any way guarded; that the elevator was, as they afterward learned, somewhere between the first and second floor and that they were precipitated into the elevator pit and plaintiff seriously injured. That the elevator was up and the entrance to the elevator shaft unguarded is not disputed; but it is denied that they were invited to drive on the elevator,

201—Mich.—21.

or that the attendant by any act, word, or appearance indicated that they should do so; on the contrary, he claims to have attempted to stop them without success. The amount of light in the garage was also a matter of dispute. There are two counts in the declaration, one a count for common law negligence, and one for statutory liability, under section 12, Act No. 285, Public Acts 1909 (2 Comp. Laws 1915, § 5333). Plaintiff had verdict and judgment against both defendants.

Each defendant moved for a directed verdict upon the ground of contributory negligence of the plaintiff and his driver as to each of them, and the further ground, that no actionable negligence of either of them, within the declaration, had been established. They also, by separate requests, asked for a directed verdict. The court having reserved the questions under the "Empson" act (Act No. 217, Pub. Acts 1915, 3 Comp. Laws 1915, § 14568 *et seq.*), defendants each moved for judgment *non obstante veredicto;* they also each filed a motion for a new trial. All these motions were refused. We shall first consider those questions common to both defendants.

The plaintiff was bound to establish that both he and his driver were free from negligence contributing to the accident. There was a direct conflict between the testimony introduced by the plaintiff and the defendants, with reference to the invitation to drive onto the elevator; there was also a marked conflict as to the amount of light in the room. The language of Mr. Justice CARPENTER, speaking for the court in *Burgess* v. *Stowe,* 134 Mich. 204, is quite applicable here. He said:

"Defendant has called our attention to a number of cases in which it has been held that a person injured by falling down an elevator shaft or into an open excavation cannot recover. We shall not attempt to discuss these cases. All of them are, in our opinion, in-

applicable. In those cases the injured party was not, as in this he was, acting under what he had a right to believe was the invitation of the defendant. This important circumstance not only created a duty on the part of the defendant, but had a very important bearing in limiting the obligation of the plaintiff to care for himself. Plaintiff certainly was not under the same obligation to guard against dangers that he would have been had no invitation been extended."

The driver, Mr. Kenfield, testified that he gave the elevator shaft a careful glance before he started the car; that he looked the situation over and the gate was high and stationary, and that he went ahead slowly. While his testimony bears the construction that he was paying more attention to the posts or sides of the elevator between which he had to drive, than he was to the floor we are not impressed that we should say, as matter of law, under all the facts of the case, that this was contributory negligence. Much is made of some testimony given by the plaintiff to the effect that he was watching the driver's feet, so as to learn how to handle the clutch. But this was when they first drove into the garage; the plaintiff testified:

"I was not watching his feet in the garage floor, but just in the driveway when the car was standing still, I was watching his feet. When he started up I looked ahead."

We do not think the case is so clear as to have justified the court in directing a verdict for the defendants on this ground. *Hommel* v. *Investment Co.*, 166 Wis. 235 (165 N. W. 20) ; *Snyder* v. *King*, 199 Mich. 345.

We next come to the statutory duty to maintain automatic gates. The section involved (2 Comp. Laws 1915, § 5333), reads as follows:

"It shall be the duty of the owner, agent or lessee of any manufacturing establishment where hoisting shafts or well-holes are used, to cause the same to be properly enclosed and secured. It shall be the duty

of the owner, agent or lessee, to provide or cause to be provided at all elevator openings in any manufacturing establishment, work-shop, hotel or store, proper trap or automatic doors or automatic gates so constructed as to open and close by the action of elevators either ascending or descending. The deputy factory inspector shall inspect the cables, gearing or other apparatus of elevators in manufacturing establishments, workshops, hotels and stores at least once in each year, and more frequently if necessary, and require that the same be kept in a safe condition, and shall have power to condemn any elevator if in his opinion the same be unsafe, and stop the operation of such elevator until the same be put in a safe condition."

We are met at the threshold of this inquiry with the question common to both defendants, of whether this statute is available to the instant plaintiff. It cannot be denied that a plaintiff seeking the benefit of a statute of this character must belong to the class for whose protection the law was passed; that the statute was designed to prevent such injuries as were suffered by the individual claiming the damages is essential. We have recently had occasion to consider this question in the case of *Johnston* v. *Cornelius*, 200 Mich. 209, and there held that Act No. 33, Pub. Acts 1909 (3 Comp. Laws 1915, § 15431), which is an act making it a felony to take or use the automobile of another without his authority, and without intent to steal the same, was not passed for the protection of pedestrians on the street, and that a pedestrian upon the street could not claim the benefit of it. This was upon the theory that the act was passed for the protection of the owners of automobiles, not the traveler upon the highway. If the act in question was passed solely for the benefit of employees it is not available to plaintiff. If it was passed for the protection, not only of employees, but also for the protection of those lawfully on the premises as invitees, and who were expected to make use of the elevator in the transaction of the business

which took them to the premises, then the plaintiff may
have the benefit of it, and a statutory duty to him
arises for the breach of which he may recover.  In the
consideration of this question we must assume the
validity of the act, as its constitutionality was not
questioned, so far as the record discloses, in the court
below.  The administration of this law falls upon the
labor department of the State; this may explain its
presence in the act in question which was a revision,
re-enactment, consolidation, and amplification of for-
mer legislation.  An examination of the former legis-
lation will demonstrate that the claim of defendants
now under consideration, that this legislation had for
its sole object the protection of employees, could have
been urged with greater force under the former legis-
lation than since the amplification found in the act of
1909, and which originally appeared in Act No. 113,
Pub. Acts 1901.  The case of *Roberts* v. *Food Co.,* 142
Mich. 589, was an action brought by an employee, and
the amendment of 1901 was unimportant as applied to
that case, and was not referred to, the court disposing
of the case under the provisions of sections 5346, 5368,
2 Comp. Laws (2 Comp. Laws 1915, §§ 5333, 5595).
Section 5368, there referred to, is section 4 of Act No.
265, of the Public Acts of 1889; by its terms it ap-
plies to "any factory, manufactory, or mercantile
establishment," and requires the precautions to be
taken "to protect the life and limbs of those employed."
Section 5346, 2 Comp. Laws, also referred to in the
*Roberts Case,* appears as section 5 in Act No. 184,
Pub. Acts 1895, and applies to "manufacturing estab-
lishments."  This section was amended by Act No. 92,
Pub. Acts 1897, by requiring inspection by the fac-
tory inspector.  The section was further amended and
its scope amplified by Act No. 113, Pub. Acts 1901,
and it was made to apply to "any manufacturing
establishment, workshop, hotel, or store."  As stated,

the case of *Roberts* v. *Food Co., supra,* grew out of an injury received by an employee in a manufacturing establishment, and the court, without considering the amendment of 1901, disposed of the case under sections 5346, 5368, 2 Comp. Laws. Mr. Justice GRANT, speaking for the court and considering these two sections, said:

"The object of these statutes is to prevent employees and others rightfully upon the premises from falling into the shaft or well of the elevator."

In the case of *Murphy* v. *Veneer Works,* 142 Mich. 677, this court had before it the act of 1901, although the case involved the question of an employee, and it was said by this court, speaking through Mr. Justice McALVAY:

"But whether a shaft is built within or without a manufactory, our construction of the statute is that it required such shaft to be properly inclosed and secured to protect all who had occasion to use it, and that in this case that statutory duty had not been performed by defendant."

In *Barfoot* v. *White Star Line,* 170 Mich. 349, this court sustained a judgment in favor of one not an employee, but lawfully on the premises, for the failure of the owner to comply with the provisions of the act of 1909. But in that case it was not disputed that plaintiff belonged to the class for whose benefit the act was passed.

It is urged that in the construction of the act we must take into consideration its title; true, but, as already stated, the administration of the act is placed in the hands of the labor department which may explain its appearance in the labor department act, and the validity of the act as against the charge of defective title is not before us.

The legislation under consideration was enacted pursuant to the police power of the State. Its purpose

was the protection of life and limb; it is based upon sound public policy and should not receive so narrow a construction as to impair its useful operation. *Tvedt* v. *Wheeler*, 70 Minn. 161.

In the case of *Parker* v. *Barnard*, 135 Mass. 116, the plaintiff was a police officer of the city of Boston; it was his duty to examine doors and windows of dwellings and stores in the nighttime to see if they were properly fastened. In the discharge of such duty he fell into an elevator shaft of defendant's building, which was unguarded as required by statute, and was injured. It was held that defendants were liable, the court saying:

"When, therefore, in the construction or management of a building, the legislature sees fit to direct by statute that certain precautions shall be taken, or certain guards against danger provided, his unrestricted use of his property is rightfully controlled, and those who enter in the performance of a lawful duty, and are injured by the neglect of the party responsible, have just ground of action against him."

*Racine* v. *Morris*, 201 N. Y. 240, was a case where the accident occurred substantially as in the *Massachusetts Case*. Plaintiff's decedent was a patrolman of the city of New York and came to his death in substantially the same manner as Parker received his injury in the preceding case. The building code of the city of New York, containing provisions requiring the guarding of elevator shafts, was invoked and like defense that decedent was not of the class protected, was made. The right of action was sustained and it was said:

"The conclusion that these requirements are not for the security of the employees whose duties within and whose presence at the buildings have terminated is reasonable, and reasonable, too, is the conclusion that it was imposed for the protection of all those who under their duties and for lawful purposes are within

the buildings. The language of the section suggests and justifies our conclusion that its purpose was to guard, to the extent of its provisions, from danger or personal injury, all persons who at any time are lawfully and in the regular course of their calling or business within the buildings."

In the case of *Baker* v. *Ellis*, 248 Pa. 64, plaintiff was a teamster employed to deliver goods to a subtenant of defendant. While on his mission he fell into an unguarded elevator shaft and was injured. Defendant was lessee of the entire building and sublet to different persons. He was obligated to maintain the elevator. It was said by the court:

"As lessee of the entire building Ellis must be regarded as a tenant in possession for the purpose of providing and maintaining the elevator under the facts of the present case, and as such liable for an injury sustained by a third person lawfully upon the premises, when such injury resulted from a defective guard to the elevator shaft of which he had notice. * * *
"That the owner, or occupant of a building, in a proper case, may be answerable in damages to a third person lawfully upon the premises, has been decided many times in this and other jurisdictions."

In *McRickard* v. *Flint*, 114 N. Y. 222, plaintiff was injured by falling into an unguarded elevator shaft. A statute applicable to the city of New York, where such accident occurred, required a railing or good and sufficient trap doors, which had not been provided in that case. The court said:

"The evidence was such as to justify the conclusion that the defendants were chargeable with negligence. And they owed to any person who should lawfully go into the building the duty, which the statute imposed upon them, to do him no injury by their negligence in that respect. That duty they owed to the plaintiff who went to the premises for a legitimate business purpose."

When we treat the section under consideration as a

police regulation, enacted pursuant to the police power of the State, designed to protect human life and to prevent accidents, when we note that it applies not only to manufacturing establishments and workshops, but also to hotels and stores, when we contemplate the fact that while in manufacturing establishments and workshops the use of the elevator by employees predominates, but that their use by invitees in hotels and stores is much greater than by employees, we feel compelled to hold that the statute in question was enacted to protect not only employees, but also invitees lawfully on the premises upon business with the owner or lessee. Any other construction would impute to the legislature an intent to protect but a portion of those exposed to like dangers, to protect a class and a·class only, an imputation in which we cannot indulge.

The duty created under this statute in the first instance rests upon both owner and lessee. *Barfoot* v. *White Star Line, supra.* As to the lessee it is a continuing duty. *Noack* v. *Hinchman Sons,* 175 Mich. 15. It follows from what we have said that the plaintiff, an invitee, lawfully on the premises on business with the lessee, belonged to the class for whose protection this statute was passed. There can be no question but that the building in which the elevator was installed was used as a repair shop or workshop, and that automobile accessories were 'here sold, so that while it is called a garage it was also a store for the sale of accessories. It follows that there was no error in refusing to direct a verdict for defendant sales company, the lessee.

The difficult question in the case is the liability of defendant Watkins. He turned over to his lessee the premises in which was installed an elevator equipped as required by this statute. His duty between him and his lessees had been performed. Where the landlord turns over the operation of an elevator to his tenant

and one is injured by the negligence of the tenant in its operation, the landlord is not liable. *Sikora* v. *Fellowcraft Club,* 189 Mich. 235. The trial court recognized this rule, held that the duty of the owner was not a continuing one, but refused defendant's request for a directed verdict and submitted the case to the jury, so far as defendant Watkins was concerned, upon the question of whether defendant Watkins had reassumed control of the elevator for the purpose of making the repairs and held that if McNally was his agent and employee, and was negligent as charged, defendant Watkins was liable. There was no covenant in the lease requiring defendant Watkins to make any repairs; in the absence of such covenant he was not bound so to do. The obligation to make repairs rested on defendant sales company by the terms of the lease. But there was testimony in the case tending to show that defendant assumed the obligation to make such repairs; indeed, we are not prepared to say that it did not go further and tend to show that he assumed the obligation of rebuilding in part the elevator structure, by expanding the opening by nine inches, something which might be said to be of a permanent character, and beyond the ordinary repair necessitated by its use.

This court has held that where the landlord assumed to make repairs, though not required so to do by his lease, he was responsible to his tenant for his negligence in making them. *Peerless Manfg. Co.* v. *Bagley,* 126 Mich. 225. To the same effect see *Michael & Bro.* v. *Printing Co.,* 150 Ky. 253; *Horton* v. *Early,* 39 Okla. 99; *Gill* v. *Middleton,* 105 Mass. 477; *Tarnogurski* v. *Rzepski,* 252 Pa. 507; *Flam* v. *Greenberg,* 158 N. Y. Supp. 670; *Marston* v. *Frisbie,* 154 N. Y. Supp. 367; *Sparks* v. *Murray,* 120 Ark. 17. Each of these cases was brought by the tenant against the landlord. In many of them the language is not circumscribed, and the opinions proceed on the theory that while the landlord is under no obligation to make repairs, and his

promise so to do after the execution of the lease and its consummation by turning over possession is without consideration and void, still if he undertakes to make the repairs he is liable for his negligence in making them. But these cases must be limited to their proper application and the doctrine must not be too broadly stated. This is made clear by the case of *Thomas* v. *Lane,* 221 Mass. 447, where the case of *Gill* v. *Middleton, supra,* is discussed. In this case the invitee of the tenant brought suit to recover for injuries received from a defectively repaired hand rail, defectively repaired by the landlord who voluntarily undertook the work. It was held that there was no liability, the court saying:

"For these reasons we are of opinion that the plaintiff, being an invitee of the tenant, had no right of action against the defendant (the landlord) by reason of the fact that the repairs which she, through her general agent, had undertaken to make in the railing were made negligently; and that this is so because the landlord under the circumstances of the case at bar owed no duty in the matter to the tenant's invitee."

But in the instant case, as we have already shown, the owner, defendant Watkins, did owe a duty to this plaintiff, a duty created by statute, that of providing the elevator with automatic gates. When defendant reassumed control of the elevator he reassumed the duty cast upon him by the statute. It would not be seriously contended that if a landlord saw fit to install an elevator in a building already erected and leased he would be required by this statute to install automatic gates, whether he was doing the work voluntarily or pursuant to the terms of a contract with his tenant. The duty provided in the statute is a duty to the public, or at least that portion of the public within its protection. If the landlord was rebuilding the elevator he would be required to discharge his statutory duty, and we are unable to differentiate between

such a case and the instant one where the landlord reassumed possession for the purpose of making repairs and in part rebuilding the elevator. There was testimony from which the jury might infer that this was the situation, and the court correctly declined to direct a verdict for defendant Watkins.

Nor are we able to say, as matter of law, that McNally was an independent contractor. The testimony as to the relations between him and defendant Watkins was drawn out on cross-examination of him and the defendants. It consisted of bits here and there which made up the whole of the testimony on the subject. Examining it all we are satisfied that it presented a question for the jury.

We are not persuaded that there was any such disparagement of, or prominence given, to witnesses or claims of either party as constituted reversible error. The charge was a lengthy one, but the size of the record indicates that the trial was protracted and 57 requests were preferred by the two defendants. The trial court could not be expected to ignore these requests but was in duty bound to give, either in language or substance, such of them as the defendants were entitled to.

Nor are we prepared to say that the verdict was so greatly against the weight of the evidence as to justify us in disturbing the order of the trial court overruling defendants' motion for a new trial. There was a conflict and a sharp one in the testimony as to the circumstances leading up to the accident; beyond this there was little dispute. Upon this crucial question the testimony of plaintiff and Kenfield was opposed by the testimony of the attendant in charge, the testimony as to statements of Kenfield immediately following the accident, and circumstances appearing in the evidence. The jury believed plaintiff and the witness Kenfield and the trial court refused to disturb their

verdict.  We are not persuaded that the trial court was in error in so doing.

The jury awarded plaintiff $6,000, and it is claimed this is excessive.  The plaintiff, in addition to running his store at Shelby, was engaged in selling sewing machines, devoting about half his time to that business and making about twenty to twenty-five dollars per week out of that branch of his business.  He has since been unable to continue that work due to his inability to do heavy lifting.  The testimony tends to show that he is permanently disabled.  Before the accident he was able to run his store with the help of his family.  Now he is obliged to hire outside help.  In the accident there were at least three fractures, the evidence is not definite but that there was a fourth.  The pubic bone was broken, there was a fracture at the elbow, his bladder was severely ruptured, necessitating a serious operation.  For weeks he suffered intense pain.  Before the accident his hearing had been impaired in one ear, and in the accident he lost the entire use of his other ear.  He paid $250 doctor's bills and $200 to a nurse who had the constant care of him for several weeks.  There can be no question upon this record as to the seriousness of his injury.  The amount awarded is not excessive.  The jury had the opportunity of observing him, and the record, we think, sustains their verdict.

We have examined all the errors assigned and find no reversible error.  The judgment should be affirmed.

MOORE, J., concurred with FELLOWS, J.

BROOKE, J.  I am unable to agree with the conclusion of my Brother FELLOWS as to the liability of defendant Watkins.  It is unquestioned that when defendant Watkins, the owner of the building, turned the same over to the defendant Kalamazoo Auto Sales Co., he had complied with his statutory duty with

reference to furnishing an automatic gate for the elevator. It is likewise undisputed that the expert, McNally, was employed by the defendant sales company to repair said gate from time to time and that upon the occasion in question he was called for that purpose by the defendant sales company. He then recommended that the posts upon either side of the elevator entrance supporting the slots in which the gate moved be placed nine inches further apart, thus making the opening the full width of the elevator entrance. Having reported this matter to his employer, the defendant sales company, they declined to stand the extra expense of putting new posts in. He testified:

"Mr. Parker and Mr. Flansburg had not declined to pay me for any repairs I made on that gate at that time and I did not tell Mr. Watkins they had that I know of. They had refused to fix the gate as I wanted it fixed. They refused to put in the new parts but they had not refused to repair the gate. They refused to furnish those posts. I wanted it fixed in that way rather than the old way because to my notion it was a better idea. That would not prevent that being torn out, it may prevent part of it but they can still tear that out. It would lessen the number of times probably that those posts would be taken out by careless driving into the elevator."

McNally thereupon took the matter up with defendant Watkins. Watkins agreed that he should make the repairs as suggested and that he, Watkins, would pay the extra expense. The repairs were made as suggested and that part for which defendant Watkins had agreed to pay had been fully completed before the accident occurred. McNally testified:

"The gate I had made was hung and all completed. I remember it now. I saw plaintiff's car before it went into the pit. I was coming in the door when I saw it. I had a package of screws and a weight and a subweight rope. The rope was to equalize the gate so there is not so much strain on the cams and post.

It would work properly before that was on but there is a good deal more strain on your cams."

Based upon the agreement of the defendant Watkins to pay for the furnishing of the new posts and setting them nine inches farther apart, my Brother asserts that he reassumed control of the elevator and thereby reassumed the duty cast upon him by the statute. This conclusion seems to me to be wholly unwarranted under the facts, but even assuming its correctness, that part of the work for which defendant Watkins had become liable had been fully performed before the accident occurred. McNally's evidence was to the effect that when he left the building to get the screws, weight, and rope the gate was operating automatically though faster than it should. He said:

"After the accident I changed the speed of the bow. That affected the operation of the gate but did not in any way affect its safety." ·

Assuming, however, that at the moment of the accident the gate was not properly operating that fact cannot be used to fix liability upon defendant Watkins, the owner (*Brady* v. *Klein*, 133 Mich. 422), because the sales company through their employee, Tucker, either knew or should have known of the defect.

I am likewise of opinion that, as between defendant Watkins and the repairman, McNally, McNally was an independent contractor. It is quite clear that Watkins neither exercised, nor retained the right to exercise, any control over McNally in his method of producing the result agreed upon.

The judgment as to defendant Watkins should be reversed, and affirmed as to defendant Kalamazoo Auto Sales Co.

OSTRANDER, C. J., and BIRD, STEERE, STONE, and KUHN, JJ., concurred with BROOKE, J.