Josie A. Potter, Administratrix, etc., of Charles N. Potter, Deceased, and Another, Respondents, *v.* New York, Ontario and Western Railway Company, Appellant.

Fourth Department, November 5, 1931.

*Avery S. Wright* [*E. N. Oakes* of counsel], for the appellant.

*Melvin & Melvin* [*Crandall Melvin* of counsel], for the respondents.

Edgcomb, J. This is a statutory action brought to recover the pecuniary damages sustained by the surviving widow and next of kin of Charles N. Potter, late of the city of Oswego, N. Y.,

whose untimely death, it is asserted, was caused by the negligence of the defendant. Plaintiffs were successful on the trial, and defendant appeals.

At the time of his demise decedent was employed by C. Edward Hawley, who was engaged in the coal business in the city of Oswego, N. Y., under the assumed name of the Hawley Coal Company. Potter's employment was a hazardous one, as defined by section 3 of the Workmen's Compensation Law, and his surviving wife was entitled to an award of thirty per cent of his wages so long as she lived, provided she did not remarry. (Workmen's Comp. Law, § 16.) She elected to take her compensation, and Hawley's insurance carrier, the Great American Indemnity Company, thereby became subrogated to her rights in this action. (Workmen's Comp. Law, § 29.)

Besides his widow, deceased left one daughter, who, at the date of her father's death, was twenty-six years old. Being over eighteen years of age, and neither dependent, blind nor crippled, she was not entitled to an award under the statute.

While the statute gives to the insurance carrier an assignment of the beneficial interest of the widow, the administrator of the decedent must bring the action, and the carrier must prosecute his remedy through such administrator as the statutory trustee. (*U. S. Fidelity & G. Co.* v. *Graham & Norton Co.*, 254 N. Y. 50; *Matter of Zirpola* v. *Casselman, Inc.*, 237 id. 367, 375.)

The accident which resulted in decedent's death occurred on defendant's coal trestle, which was located on the shore of Lake Ontario in the city of Oswego, N. Y. There were some fifty pockets or bins in the trestle. The coal was unloaded from the cars into these pockets through an opening between the tracks in the deck of the trestle, and in turn was dumped into wagons or boats, depending on whether the particular pocket was over land or water, by opening a chute at the bottom, and allowing the coal to run out into the receptacle beneath. These pockets were twenty or twenty-five feet deep. Ladders were fastened to the inside wall of the bin to enable one to go down into the pocket, if the occasion required.

For upwards of six years prior to this accident Mr. Hawley had occupied several pockets in this trestle under circumstances which will be detailed later. On the morning of June 7, 1928, Mr. O'Dell, who was drawing coal for the Hawley Coal Company, was filling his truck from one of his employer's bins. Plaintiffs' intestate, who had worked for Mr. Hawley continuously for some five years, was present superintending the work. Decedent went down in the bin on two occasions that morning to shovel coal, which had accumulated on the side, out towards the mouth of the

chute. As he was climbing out the second time the ladder became loose, and he lost his footing, and fell to the bottom of the pocket, receiving injuries from which he died ten days later.

Defendant's negligence as charged in the complaint consisted in its failure to maintain the ladder in a safe condition, and in permitting it to become worn, dilapidated, broken, defective, loose and dangerous.

While there is evidence which would warrant a jury in finding that decedent's fall was occasioned by a defective condition of the ladder, it is elementary that such defect cannot be made the basis of a recovery against the defendant, unless some duty or obligation rested upon the railroad company to maintain the ladder in a safe condition for decedent's use. The burden of showing such obligation rested on the plaintiffs. I think that they have failed to sustain such burden.

The trestle in question was not a public structure. People generally had no occasion to go upon it. It was only the railroad employees, and those using the pockets, whose business called them there. Those who had occasion to use this ladder, or to go down in the bin, were still more limited. So the defendant was not bound to keep the ladder in repair because of any duty which it owed the public.

Decedent was a stranger to the defendant. He was an employee of Hawley's, and, so far as his relation to the appellant is concerned, stood in Hawley's shoes. The railroad company owed Potter the same debt which it owed Hawley; no more and no less. It, therefore, becomes necessary to determine what relation existed between defendant and Hawley.

Back in 1922 Hawley desired to use certain pockets in this trestle in connection with his coal business. Accordingly on November fifteenth of that year he wrote defendant's manager the following letter: " Under new arrangement made with Mess. Dickinson and Eddy, confirmation of which I received from them in a letter today, it has been arranged that I am to take over the lease for the retail pocket at Oswego, New York, and I, therefore, beg to receive your approval and authority to do so at the present rental charge of ten (10c) cents per gross ton for all coal handled through said pockets."

On the following day the general manager of the defendant replied as follows: " Referring to your letter of November 15, in regard to lease of the retail coal pockets at Oswego, N. Y., you have my authority and approval to occupy these coal pockets at the present rental of ten (10c) cents per gross ton for all coal handled through the pockets. I wish you would please report the amount

of coal handled per month directly to Mr. Marsden, who will render bill."

Thereafter, and down to and including the date of this accident, Hawley occupied these bins, and, so far as the record shows, had exclusive occupancy thereof.

Appellant takes the position that these two letters constitute a lease between the railroad company and Hawley. Plaintiffs dispute this proposition, and say that the correspondence shows an assignment to Hawley of a former lease given by the defendant to Dickinson and Eddy. For the moment we may disregard which contention is correct, because it seems to be conceded, and is apparent from the above-quoted letters, that the relation of landlord and tenant exists between defendant and Hawley, no matter when the lease may have been made, or what its terms may be. That being so, defendant's duties and obligations regarding repairs are those which are imposed upon a landlord.

There is no implied warranty on the part of the owner that the demised premises are fit for occupation, or suitable for the use or purpose for which they are leased. (*Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Daly* v. *Wise*, 132 id. 306; *Franklin* v. *Brown*, 118 id. 110; *Brown* v. *DeGraff*, 183 App. Div. 177.) Neither is a landlord required to repair the leased property, in the absence of an express agreement on his part so to do. (*Witty* v. *Matthews*, 52 N. Y. 512; *Doupe* v. *Genin*, 45 id. 119; *McAlpin* v. *Powell*, 70 id. 126, 129; *Trustees of Canandaigua* v. *Foster*, 156 id. 354, 360; *Garrity* v. *Propper*, 209 App. Div. 508; *Richmond* v. *Lee*, 123 id. 279.)

It is true that a landlord might be held liable if he fraudulently and wrongfully failed to disclose some defect of which he was aware, but which was unknown to the tenant, where such imperfection rendered the premises dangerous and unfit for the use for which they were leased. But such a situation does not arise here. The condition of the pocket and ladder in question was open and obvious to any observer, and was just as apparent to Hawley as it was to the owner. There is no suggestion, much less evidence, of any fraud or concealment on the part of the defendant.

If the above-mentioned letters constitute the lease under which Hawley was occupying this property, as claimed by defendant, it is clear that the railroad company never covenanted to keep the premises in repair, and was under no obligation so to do. If, on the other hand, the letters simply show an assignment, with the approval of appellant, of the Dickinson and Eddy lease to Hawley, as asserted by the plaintiffs, we are left in the dark as to the terms of the agreement, as no evidence was given of its contents.

No particular words are necessary to constitute a lease. While these letters contain most, if not all, of the elements necessary to the relation of landlord and tenant, I do not deem it necessary to determine whether this correspondence, or the Dickinson and Eddy lease, constitutes the contract between defendant and Hawley. Whichever theory is adopted, the record is devoid of any evidence showing a covenant on the part of the defendant to keep the premises in repair. The burden rests on the plaintiffs to show such agreement; without it there can be no recovery here. We cannot assume that the Dickinson and Eddy lease imposed such obligation on the railroad company. A covenant to repair will never be implied. (*Witty* v. *Matthews*, 52 N. Y. 512; *Daly* v. *Wise*, 132 id. 306; *Freiot* v. *Jacobs*, 209 App. Div. 334, 336.)

Plaintiffs were permitted to prove, over appellant's objection and exception, that the defendant made repairs to the pocket in question, both before and after the accident. There is also some evidence that one of defendant's carpenters, while inspecting the trestle generally, looked over the ladder in question, and considered that a part of his job.

The trial court permitted the jury, in determining what the arrangement between the parties actually was, to take into consideration the fact, if they found it to be so, that the defendant made repairs to the pockets, as showing the practical construction which the parties placed on the agreement between them, and as some evidence of what that arrangement actually was. This, I think, was error.

The practical construction put upon an agreement by the parties is important, and often controlling, when there is any ambiguity in the language of the contract itself. But until it appears that the agreement is capable of being understood in either of two or more possible senses, resort to the interpretation put upon it by the parties is not needed or useful. If the letters which passed between defendant and Hawley constitute the arrangement between them, the terms are clear and fixed, and there is no ambiguity. Nothing being said about repairs, no obligation in relation thereto rested on the defendant. If the arrangement was determined by the Dickinson and Eddy lease, we are left in the dark as to its provisions, and do not know whether its terms are clear and definite, or conflicting and uncertain. The rule invoked by the trial court, therefore, has no application here.

The charge of the trial court that the proof failed to show whether Hawley was a tenant in the broad sense of the term, or whether he had a license to use the pocket for the purpose of distributing defendant's coal, is unwarranted by the evidence. There is nothing

in the record which indicates any relation between Hawley and the railroad company, except that of landlord and tenant. It does not appear whose coal Hawley was handling. There is no evidence that the railroad company owned or had an interest in any coal, or that it was distributing or selling any in Oswego.

The fact, if it is a fact, that the defendant inspected and repaired these pockets, is no evidence of any obligation upon its part so to do, in the absence of a covenant to that effect. The repairs, if made voluntarily, do not constitute an admission on the part of the appellant of any obligation to keep the structure in proper condition. Such acts would be gratuitous, in the absence of some contractual duty, and would impose no obligation on the part of the landlord. (*Marston* v. *Frisbie*, 168 App. Div. 666, 670; *Elefante* v. *Pizitz*, 182 id. 819; affd., 230 N. Y. 567; *Conahan* v. *Fisher*, 233 Mass. 234, 238; *Hannaford* v. *Kinne*, 199 id. 63, 65; *Phelan* v. *Fitzpatrick*, 188 id. 237, 239; *Galvin* v. *Beals*, 187 id. 250, 253; *Kearines* v. *Cullen*, 183 id. 298, 300, 301; *McKeon* v. *Cutter*, 156 id. 296.)

Even if the repairs were made pursuant to an agreement which was made after the lease had been entered into, the situation would not be altered, because such a provision would be without consideration, and a mere *nudum pactum*. (*Eisert* v. *Adelson*, 136 App. Div. 741; *Bronner* v. *Walter*, 15 id. 295; *Wynne* v. *Haight*, 27 id. 7; *Marston* v. *Frisbie*, 168 id. 666.)

It is apparent, therefore, that the trial court erred in permitting the plaintiffs to show that the defendant repaired and inspected this pocket, and in allowing the jury to consider such evidence in determining what the agreement between Hawley and the defendant actually was.

But even if it could be held that there was evidence showing an agreement on the part of the railroad company to keep this pocket and ladder in proper condition, it would not entitle plaintiffs to recover, because the law in this State is well settled that a contract to repair does not contemplate, as a measure of damage for its breach, a liability for personal injuries occasioned by an infraction of such contractual obligation. If that were not the rule, a failure of one to pay his promissory note when it became due would make him liable for all consequential damages arising from such neglect. To sustain an action for a tort, there must be a breach of duty distinct and apart from a breach of contract. (*Cullings* v. *Goetz*, 256 N. Y. 287; *Stelz* v. *Van Dusen*, 93 App. Div. 358; *Schick* v. *Fleischhauer*, 26 id. 210; *Kushes* v. *Ginsberg*, 99 id. 417; affd., 188 N. Y. 630.)

This is not the case of a defective condition in some part of the

584

· structure ... lich was retained by the defendant, and which was
used and ... cupied by others along with the lessor, in which case
the defend ... it would be bound to keep such portion in a reasonably
safe condi ... on for those rightfully using it. (*Dollard* v. *Roberts*,
130 N. Y. ... 39; *Kilmer* v. *White*, 254 id. 64; *Maslin* v. *Childs*, 146
App. Div. ... 74.)

Here th ... entire pocket was leased to Hawley, and the ladder
was in the ... ocket. There is no evidence that the defendant ever
used it, or ... stained any control over it. Lack of control involves
relief from ... ny obligation to repair.

It is no ... ought to hold the appellant liable here because of its
failure to ... air some part of the trestle which it retained and was
bound to ... p in proper condition, and where such failure was the
cause of t ... defective and weakened condition of the ladder, in
which case ... ie defendant would be liable under the rule laid down
in *Golob* v ... *Pasinsky* (178 N. Y. 458) and *Frank* v. *Simon* (109
App. Div. ... ).

Nor can ... he defendant be held on the theory that, in making
repairs to ... is ladder, it made them in a careless and improper
manner, a ... that such negligence was the proximate cause of
decedent's ... cident. No such claim or suggestion is made here.

I have, t ... refore, reached the conclusion that no obligation rested
on the rail ... id company to keep the pocket and ladder in repair.
That bein ... o, defendant is not liable for any damages resulting
to the plai ... ffs by reason of decedent's death.

It follow ... hat the judgment should be reversed.

All conc ... Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMP-
SON and C ... OSBY, JJ.

Judgmer ... and order reversed on the law and a new trial granted,
with costs ... the appellant to abide the event.