GEORGE A. EDWARDS, as Executor of WILLIAM C. EDWARDS,
Deceased, Landlord, *v.* OLLEN RESTAURANT CORPORATION,
Tenant.

Municipal Court of the City of New York, Borough of Brooklyn, June 28, 1950.

*Anthony J. Weslan* for landlord.

*A. Peter Targum* for tenant.

FEIDEN, J. This is a summary proceeding brought by the landlord to recover possession of the " store and basement " of premises 16 Howard Avenue, Brooklyn, New York City, occupied by the tenant as a restaurant and bar and grill. Both sides concede that the tenant occupies the premises as a statutory tenant, the lease running from April 1, 1945, to March 31, 1948, having terminated. It is the claim of the landlord that the tenant has violated substantial obligations of the lease. There are two floors above the leased premises.

The pertinent provisions of the lease are as follows: " 2nd. That the Tenant shall take good care of the premises and shall, at the Tenant's own cost and expense make all repairs on the demised premises, and at the end or other expiration of the term, shall deliver up the demised premises in good order or condition, damages by the elements excepted.

" 26. The landlord shall supply the Tenant with (30) tons of coal per annum, for the purpose of heating the demised premises. In the event that more than thirty (30) tons are required, the Tenant shall then supply the deficiency. The Tenant further agrees to tend to the furnace which supplies the heat to the demised premises and if necessary to hire a janitor at its own cost and expense for such purpose ".

The furnace referred to in the lease, supplies heat to the entire building. In November, 1948, the furnace broke down. When no heat was supplied, due to the breakdown, for over a year, the tenant of the upper floors instituted proceedings in the Magistrate's Court against the landlord. The case was thereafter, in the usual course, referred to the Court of Special Sessions of the City of New York. By registered letter, dated January 6, 1950, which according to the return receipt was received by the tenant on January 7, 1950, the landlord called the tenant's attention to its failure to repair the heating system and to provide heat. The letter stated that if the landlord was required to make the repairs, proceedings would be instituted to recover possession of the leased premises. The landlord gave the tenant until 8:00 A.M. on January 9, 1950, and referred to previous demands for compliance with the terms and conditions of the lease. At the conclusion of the case in the Court of Special Sessions some time in January, 1950, the landlord replaced the furnace. Two

or three weeks thereafter, the heating system broke down again. The tenant asked the landlord if he would contribute towards fixing the furnace. However, the landlord himself had the furnace repaired on the tenant's promise to pay half the cost. After the furnace was repaired, the tenant refused to pay its share. The furnace broke down once again and has not been repaired, with the result that since February, 1950, up to the time of the trial during the month of May, 1950, no heat was supplied to the building.

The landlord claims that the furnace broke down because of lack of proper care on the part of the tenant. He testified that on one occasion after a breakdown the valves were shut off and the boiler cracked because water was not let in. There is proof that the tenant for some unexplained reason had a porter on duty only between the hours of 4:00 A.M., until 10:00 A.M. each day and that when during the other parts of the day the furnace required attention, the bartender in the bar and grill would ask one of the customers to go down and take care of it. This testimony was not competently contradicted by the tenant.

During the year 1946, the boiler had broken down and had to be replaced. The landlord claimed that the breakdown took place because a valve was shut off with the result that the boiler cracked in three or four different places. The landlord and tenant shared this expense.

The landlord did not have access to the basement and could enter only on securing the keys thereto from the tenant.

Since it is conceded that the tenant is a statutory tenant, the terms and conditions of the original lease continue except as to the duration of the term and the amount of rent the tenant is required to pay. (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267; Commercial Rent Law [L. 1945, ch. 3, as amd.]; *Klipack* v. *Raymar Novelties*, 273 App. Div. 54; *551 Fifth Avenue, Inc.* v. *Masch*, 185 Misc. 142.)

Neither counsel nor the court has been able to discover any New York case dealing with the obligation of a tenant with respect to furnaces located in demised premises. This precise question of law however has been the subject of adjudication in other jurisdictions. These cases hold that under a covenant by a lessee to keep premises in repair, the replacement of a worn-out, useless furnace or a boiler by a new one is a repair which the tenant is obligated to make. (*Bell House* v. *Wilkins*, 34 Ga. App. 285; *Peck* v. *Scoville Mfg. Co.*, 43 Ill. App. 360; *Arnold Evans Co.* v. *Hardung*, 132 Wash. 426; Annotation, 45 A. L. R. 12, 52.)

Since the heating plant is part of the realty and is obviously a portion of the premises leased to the tenant (*Levenson Wrecking Co.* v. *Hillebrand,* 93 Misc. 530; *Jacob* v. *Kellogg,* 56 Misc. 661; *McOwen* v. *Zimmerman,* 133 N. Y. S. 461) it must be within the purview of that clause of the lease requiring the tenant to " take good care of the premises  *  *  * and at [his] own cost and expense make all repairs ".

In the absence of a covenant to the contrary, the lessor is under no obligation to repair the demised premises. A lessee assumes all the risks arising from the condition of the premises unless there is an express agreement on the part of the lessor in relation thereto, and, an express covenant will not be enlarged by construction. (*Witty* v. *Matthews,* 52 N. Y. 512; *Clancy* v. *Byrne,* 56 N. Y. 129, 133; *Jaffe* v. *Harteau,* 56 N. Y. 398; *Liebman* v. *Aldhous,* 105 Misc. 728; *Potter* v. *New York, Ontario & Western Ry. Co.,* 233 App. Div. 578; *Schiavone* v. *Callahan,* 52 Misc. 654; *Richmond* v. *Lee,* 123 App. Div. 279; *Island Pontiac Corp.* v. *Perkins Trucking Co. Inc.* [App. Term, 2d Dept., Dec. 1949]; *Caton* v. *Ambos* [App. Term, 2d Dept., May, 1948]; *Richie* v. *Schorr* [App. Term, 2d Dept. March, 1934].)

Nor will covenants to repair be implied (*Witty* v. *Matthews,* 52 N. Y. 512, *supra; Richmond* v. *Lee,* 123 App. Div. 279, *supra; Potter* v. *New York, Ontario & Western Ry Co.,* 233 App. Div. 578, *supra; Schiavone* v. *Callahan,* 52 Misc. 654, *supra*).

Where, as in this case, the exclusive control of the basement was in the tenant, there can be no question that the obligation to keep and maintain that portion of the premises including the furnace devolved upon the tenant. (*Elefante* v. *Pizitz,* 182 App. Div. 819, affd. 230 N. Y. 567; *Simkin* v. *Blum,* 131 Misc. 365; *Jacobs* v. *McGuire,* 77 Misc. 119; *Pross* v. *Excelsior Cleaning & Dyeing Co.,* 110 Misc. 195; *Frank* v. *Bowman Automobile Co.,* 195 App. Div. 377, 380, affd. 233 N. Y. 584; *Gregory* v. *Manhattan Briar Pipe Co.,* 174 App. Div. 106, affd. 226 N. Y. 561; *Bubeck* v. *Farmers' Loan & Trust Co.,* 180 App. Div. 542; *Stebbins* v. *Lanza* [App. Term, 2d Dept., Nov., 1941]; *Island Pontiac* v. *Perkins Trucking Co.* [App. Term, 2d Dept. Dec., 1949]; 51 C. J. S. § 366, pp. 1071, 1074.)

The mere fact that the landlord shared the cost of replacing the furnace in 1946, replaced the furnace in January, 1950, under compulsion of the criminal proceedings, and even chose to share the expense of repairing the boiler the last time it was repaired, is in no way an admission of an obligation so to do and tends in no manner to create any duty not imposed by the contract itself. (*Elefante* v. *Pizitz,* 182 App. Div. 819, affd. 230

N. Y. 567, *supra; Brainard* v. *New York Central R. R. Co.,* 242 N. Y. 125, 134; *Potter* v. *New York, Ontario & Western Ry. Co.,* 233 App. Div. 578, *supra; Marston* v. *Frisbie,* 168 App. Div. 666, 670; *Conahan* v. *Fisher,* 233 Mass. 234, 238; *Hannaford* v. *Kinne,* 199 Mass. 63, 65; *Phelan* v. *Fitzpatrick,* 188 Mass. 237, 239; *Galvin* v. *Beals,* 187 Mass. 250, 253; *Kearines* v. *Cullen,* 183 Mass. 298, 300, 301; *McKeon* v. *Cutter,* 156 Mass. 296.)

The tenant was required on the expiration of the term to deliver up the demised premises " in good order or condition, damages by the elements excepted " and was required during the term of the lease to " take good care of the premises  *  *  * and at the Tenant's own cost and expense make all repairs ". The term " damages by the elements excepted ", covers destruction by fire, without the fault or neglect of the lessee, and includes all injury by wind, rain, snow, frosts, and heat, as well as ordinary decay from natural causes (51 C. J. S., Landlord and Tenant, § 368, p. 1102). The provision requiring the tenant to surrender up the premises in good order damages by the elements excepted and that requiring the tenant to take good care of the premises must be read together. (*Gould* v. *Springer,* 206 N. Y. 641, 646; *Island Pontiac Corp.* v. *Perkins Trucking Co.,* [App. Term, 2d Dept., Dec., 1949].) They imposed on the tenant the obligation to keep and maintain the furnace in good, workable condition.

Where, as in this case, the parties in clear and unequivocal language, defined the duty to repair, there is no room left for construction. (*Mirsky* v. *Seaich Realty Co.,* 256 App. Div. 658; 51 C. J. S., Landlord and Tenant, § 368, p. 1087.)

If it be assumed that the repairs required of the furnace were unusual and extraordinary or were structural in nature, the burden of proving this fact was on the tenant. The rule is that the burden is on the tenant who has covenanted to make repairs to show that particular repairs were within an exception to the covenant. (*Taylor* v. *Campbell,* 123 App. Div. 698; 51 C. J. S., Landlord and Tenant, § 372, p. 1119.) Where the common-law rule that the landlord has no duty to repair in the absence of an agreement to do so prevails, the burden of proving such a covenant by the landlord is on the tenant. (*Harrill* v. *Sinclair Refining Co.,* 225 N. C. 421, 36 C. J., Landlord and Tenant, p. 164, note 58; 36 C. J., Landlord and Tenant, p. 163, note 56; *Peck* v. *Scoville Mfg. Co.,* 43 Ill. App. 360, *supra.*)

There is no dispute that the premises were without heat from the middle of November, 1948, until the furnace was replaced in January, 1950. The evidence shows that there has been no heat

since February, 1950, during all the remaining months when heat is required. The furnace is now in disrepair. The evidence is clear that the landlord fulfilled his obligation to provide coal. The tenant has therefore failed to provide heat as required under the lease. Nor has the tenant by any competent proof explained its failure other than to make a claim, unsupported by evidence, that the boiler was not installed properly. In addition the evidence clearly shows a failure on the part of the tenant to provide adequate attention for the furnace.

The registered letter dated January 6, 1950, received by the tenant January 7, 1950, fully complies with all legal requirements of notice to be given by the landlord to the tenant.

Final order for landlord. Thirty days' stay, with leave, however, to the tenant, on a proper showing, to make application for a further stay.