Philip B. Heller, J.
This action is brought to recover two months’ rent due June 1 and July 1, 1963, aggregating $280 for business premises leased by plaintiff to defendant under a written lease dated April 10, 1963, made for a two-year term commencing May 1, 1963. The pleadings are informal. The answer pleads a general denial; and a defense and counterclaim demanding $870 and alleging that “ plaintiff fraudulently leased certain premises to defendant, said premises being and known to be by said plaintiff at the time unfit for the conducting of any business.” The defense and counterclaim depend upon evidence that during heavy rainstorms the street in front of the demised premises becomes flooded making access to the premises difficult.
It is clear that the alleged flooding of the streets adjacent to the premises is not caused by any act or omission of the plaintiff. I am also persuaded from the record that the interior of the premises do not become wet by reason of the street flooding. Moreover, the witnesses for the defendant acknowledged that they had inspected the premises and the lease contained a recital that the tenant was “ taking the premises in ‘ as is ’ condition.” It must be inferred that if either the store or the basement in fact showed evidences of invasion of water, the witnesses would have observed the same and not accepted the premises in their then condition.
As I read the authorities, there is no implied warranty on the part of an owner that demised premises are fit for occupation or suitable for the uses for which they are leased and he has no liability in that context unless there has been fraud, deceit or *362 wrongdoing on the part of the landlord (see, e.g., Franklin v. Brown, 118 N. Y. 110, 113; Daly v. Wise, 132 N. Y. 306; Potter v. New York, Ontario & Western Ry. Co., 233 App. Div. 578, 581; Akerly v. White, 58 Hun 362). If that be true with reference to conditions over which an owner has control, it must obviously be true with reference to conditions over which an owner has no control.
On the facts in the case at bar, I find that there is no evidence whatsoever that the plaintiff had any knowledge of the street conditions after a rain, or that the defendant made any inquiry with respect thereto, or that there were any representations by the plaintiff or any concealment by it of what should have been revealed. No authority has been cited to the court that would establish fraud or deceit by misrepresentation or concealment on such a barren and sterile record. The defense and counterclaim are, therefore, dismissed on the merits. It may also be noted that the defendant proved no damages, which would be essential were the counterclaim tenable.
It is also urged that the premises were not shown to be vacant. There is neither claim nor proof of surrender of the premises. One of the defendant’s witnesses even stated he did not recall whether he still had a key, the other did not testify on the subject, and both testified to their having passed the premises on many occasions without either stating that the premises were in fact occupied by another tenant.
The burden of proving a surrender and acceptance is on the tenant (Levitt v. Zindler, 136 App. Div. 695). That burden has not been met.
It was also suggested the plaintiff failed to show damages in that it did not establish that the premises were continuously vacant or that they could not be relet. The testimony was conclusive that the rent due on June 1 and July 1 had not been paid. The plaintiff was under no obligation or duty to the defendant to relet or attempt to relet the premises (Becar v. Flues, 64 N. Y. 518; Knabe & Co. Mfg. Co. v. Dinwiddie, 116 N. Y. S. 716). The defendant acquired a legal right to possession of the premises and it may or may not occupy them, as it pleases, but it must in any event pay the rent (59 Madison Ave. Corp. v. Bauer, 15 Misc 2d 780, 781 and authorities there cited).
On the entire case judgment is directed for the plaintiff against the defendant for the relief demanded in the summons, to wit, $280 with interest thereon from July 3, 1963, plus costs and disbursements.