[Civil No. 3489. Filed May 2, 1935.]

[45 Pac. (2d) 23.]

ED OLSEN, Appellant, v. LILLIAN MADING, Administratrix of the Estate of J. F. MADING, Deceased, Appellee.

Messrs. Marks & Marks and Mr. V. R. Seed, for Appellant.

Messrs. Struckmeyer & Jennings and Mr. Henry S. Stevens, for Appellee.

LOCKWOOD, C. J.—J. F. Mading, hereinafter called plaintiff, brought suit against Ed Olsen, hereinafter called defendant, to recover damages for personal injuries sustained by plaintiff as the result of a fall caused by a defective stairway on premises owned by defendant, but leased by him to one Nancy Gardner. Since the filing of the action plaintiff has died, and his administratrix has been substituted for him. Defendant was a resident of California, and plaintiff, therefore, at the time of filing his amended

complaint, filed an affidavit in attachment alleging that "defendant is about to dispose of his property situated in the state of Arizona for the purpose of defeating the collection of any judgment that may be rendered in the action." The complaint and *alias* summons was served by registered mail upon defendant in California, and a writ of attachment was duly issued by the superior court of Maricopa county, attaching the real estate upon which the accident occurred. Defendant thereafter filed a special plea to the jurisdiction of the court, supported by his affidavit, alleging that the matters stated in the affidavit of attachment, and upon which the issuance of the writ was based, were false. The trial court refused to listen to any evidence controverting the affidavit on attachment, and the plea to the jurisdiction was overruled. Thereafter, defendant answered the complaint on the merits. The case was tried to a jury, which returned a verdict in favor of plaintiff in the sum of $5,000, and after the usual motion for new trial was overruled, this appeal was taken.

There are nine assignments of error, six of them being dependent upon our conclusion as to the general principles applicable to the liability of a landlord for injuries suffered as a result of defects in the leased premises. The other three assignments raise independent questions of law.

The first question is as to the overruling of the plea to the jurisdiction of the court. Since the defendant was a resident of California and could not be personally served with summons, the only manner in which plaintiff could recover an effective judgment within the state of Arizona was by levying an attachment upon some property of defendant within the state. *Porter* v. *Duke,* 34 Ariz. 217, 270 Pac. 625. This he endeavored to do. In order to secure an at-

tachment, he was required to show one of the grounds set forth in section 4241, Revised Code 1928. He chose the one which requires an affidavit that "the defendant is about to dispose of . . . his property . . . for the purpose of defeating the collection of the judgment. . . . " This affidavit defendant attempted to controvert on the theory that if he could do so successfully the attachment would fall and no effective judgment could be obtained against him. The question before us is whether or not an affidavit on attachment for a debt which is due may be thus controverted. We have determined this question in the case of *O'Malley Lumber Co.* v. *Martin, ante,* p. 349, 43 Pac. (2d) 200, just decided, adversely to the contention of defendant. We hold, therefore, that the court did not err in refusing to hear evidence as to whether the affidavit for attachment was true or not. Defendant having thereafter answered on the merits, it had jurisdiction to proceed with the action. The first assignment of error is not well taken.

We consider next the questions raised by the six assignments of error which we have referred to above. The evidence in the case shows that defendant rented the premises in question to Mrs. Nancy Gardner in January, 1929, and that the lease did not require the landlord to keep the premises in repair. Shortly after she went into possession of the premises, which consisted of a rooming house located in the second story of defendant's building, she discovered that the rear stairway, and particularly the handrail thereof, was in an unsafe condition, and complained of it to defendant. The latter several times attempted to repair the stairway in some manner which does not appear specifically in the evidence, but in June of 1929 he caused a carpenter to wire the entire stairway tightly to the side of the building,

and in August or September of the same year had another carpenter replace some of the treads in the stairway, put in an additional stringer, and move the bottom post supporting the handrail up a step. No new material was used in the handrail or the supporting post, or was it in any other respect changed. Plaintiff in December, 1929, rented a room from Mrs. Gardner and lived there for about a month, when he was taken to a hospital suffering from pneumonia. Some two weeks later he was released from the hospital and returned to the premises for the purpose of re-engaging a room. He entered them by ascending the rear stairs, and talked to Mrs. Gardner for a little time about the room and the possibility of having it heated, the better to protect his health. He then started to descend the rear stairs to return to his automobile, grasping first the side of the porch and then the handrail. The latter gave way with him, and he lost his balance and fell to the ground, breaking his leg. All of the evidence points definitely to the conclusion that the accident resulted from a defect which existed in the handrail when Mrs. Gardner first leased the premises from defendant, and that such defect, although it might not have been aggravated by the various attempts of defendant to repair the stairway, certainly was not corrected thereby.

There are certain principles of the law of landlord and tenant governing the question of repairs which are agreed upon by both plaintiff and defendant. They may be briefly stated as follows: (1) The rights of those subleasing from a tenant are no greater against the landlord than are the rights of the tenant. (2) When a lease contains no agreement or warranty as to the condition of the premises, or as to repair thereto, the tenant takes the premises as

they are, and the landlord cannot be required to make them safe, nor is he responsible for any patent defects therein. (3) There is no statutory duty in Arizona requiring the landlord to keep leased premises safe for the use of his tenant or subtenants of the latter. (4) There can be no recovery, either by a tenant or those in privity with him, for mere failure of a landlord to carry out a gratuitous promise to repair defects in the premises.

The vital point in dispute is that plaintiff contends that where a landlord who is not obligated to repair premises, not only promises to repair them, but actually proceeds to do so, he is under the duty to make his repairs effective, and if he does not perform that duty in a reasonably skillful and prudent manner he is liable for damages resulting from the original defects, even though his repairs do not aggravate them; while it is the position of defendant, on the other hand, that even though a landlord does make a gratuitous promise to repair when it is not his duty to do so, and proceeds to make the repairs, a mere failure to remedy the original defect will not render him liable for accidents resulting therefrom; his only responsibility being that of not increasing the danger by reason of the attempted repairs.

The question is one of first impression in Arizona, and is determinative of whether or not defendant in this case is responsible for the injury which plaintiff admittedly received by reason of a defective condition of defendant's premises. There is some conflict in the authorities; a number impliedly, if not directly, sustaining the contention of defendant. *Rhoades* v. *Seidel,* 139 Mich. 608, 102 N. W. 1025; *Byers* v. *Essex Inv. Co.,* 281 Mo. 375, 219 S. W. 570. On the other hand, there are several authorities which support the contention of plaintiff. Since we

have never had a similar question before us, we are at liberty to adopt the rule which we consider the most consonant with the principles of justice and common sense. Upon an examination and comparison of all the authorities, we think the more equitable and modern rule is set forth in the case of *Marks* v. *Nambil Realty Co., Inc.*, 245 N. Y. 256, 157 N. E. 129. The case is short and states the law and the reasons therefor so lucidly that we set it forth practically in full:

"Plaintiff was the tenant of the ground floor and cellar of a building in the city of New York. A flight of stairs leading to the cellar fell out of repair. The iron stringer supporting the lowest step was planted in concrete which had become broken and hollow. The defendant, the landlord, was notified of the defect and promised to correct it. The promise was gratuitous, for the stairs were not for the common use of all the occupants of the building, but were wholly within the premises demised. There was thus no duty to repair, since the building was not subject to the Tenement House Law (Consol. Laws, chap. 61), but was leased for business uses (*Altz* v. *Leiberson*, 233 N. Y. 16, 134 N. E. 703). The landlord, however, did repair, and made a bungling job of it. The broken concrete was not reset, but the fragments were cleared away, and a piece of wood, ill-secured, was inserted between the stringer and the ground. The plaintiff expressed misgivings as to the safety of the prop, but was assured by the landlord's agent that it would 'last forever.' The event belied the prophecy. Step and prop collapsed under the burden of the plaintiff's weight. He was thrown to the ground, and suffered injuries for which he sues.

"The landlord, though a volunteer in making the repairs, is liable, none the less, for negligence in making them. 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' (*Glanzer* v. *Shepard*, 233 N. Y. 236, 239, 135 N. E. 275, 276 (23 A. L. R. 1425). The distinc-

tion in such cases is the old one between nonfeasance and misfeasance. [Citing cases.] A landlord in these circumstances is not charged with liability on the basis of the nonperformance of a voluntary promise. He is charged with liability, because, having chosen to perform, he has thereby become subject to a duty in respect of the manner of performance. The cases are many in which liability has been enforced upon that footing for the protection of a tenant. [Citing cases.]

"We recall these familiar principles because they seem to have been overlooked in cases in the Appellate Division relied on by the defendant here. *Marston* v. *Frisbie,* 168 App. Div. 666, 154 N. Y. Supp. 367; *Wynne* v. *Haight,* 27 App. Div. 7, 50 N. Y. Supp. 187. There is a suggestion, if not a ruling, in these cases, that to make the landlord liable, the negligent repairs must have aggravated the defect, so that what was dangerous before became more dangerous than ever. We cannot yield assent to this restriction of the field of duty. The tenant does not have to prove that by the negligent making of the repairs what was wrong has been made worse. *His case is made out when it appears that by reason of such negligence what was wrong is still wrong, though prudence would have made it right.*

"We do not read the charge of the learned justice at Trial Term as laying down any rules at war with those announced in this opinion. He told the jury in effect that the defendant was not liable if the step collapsed through some defect unrelated to the prop, and hence not within the scope of the promise to repair. If the charge were to be read, however, as restricting liability within the narrow limits of the rule in *Marston* v. *Frisbie, supra,* a verdict thus limited would have a basis in the evidence. The plaintiff came down the stairs, his arms hampered by a burden. The inference is permissible that the presence of the prop cloaked the defect, dulled the call to vigilance, and so aggravated the danger.

"The judgment should be affirmed, with costs." (Italics ours.)

This case has been repeatedly cited approvingly and followed in the state of New York. *Kirshenbaum* v. *General Outdoor Advertising Co., Inc.,* 258 N. Y. 489, 180 N. E. 245, 84 A. L. R. 645; *H. R. Moch Co., Inc.,* v. *Rensselaer Water Co.,* 247 N. Y. 160, 159 N. E. 896, 62 A. L. R. 1199; *Israel* v. *Toonkel,* 134 Misc. 327, 235 N. Y. Supp. 285; *Parker* v. *Jenkins,* 135 Misc. 666, 239 N. Y. Supp. 344; *Vrooman* v. *City Sav. Bank of Albany,* 232 App. Div. 438, 251 N. Y. Supp. 505; *Comfort et al.* v. *McCorkle,* 149 Misc. 826, 268 N. Y. Supp. 192. It has occasionally been distinguished in New York. *Barile* v. *Wright,* 256 N. Y. 1, 175 N. E. 351; *Caldwell* v. *Wildenberg,* 228 App. Div. 557, 240 N. Y. Supp. 280, but the general doctrine has never been disputed in that state. There are many other cases which support the same general principle. *Horton* v. *Early,* 39 Okl. 99, 134 Pac. 436, 47 L. R. A. (N. S.) 314, Ann. Cas. 1915D 825, and cases cited therein.

We hold, therefore, that since there is evidence to the effect that defendant did voluntarily endeavor to make repairs on the defective staircase, and that such repairs did not correct the defect which existed therein, and which had been called to his attention, although it could have been corrected by reasonable care, the jury was justified in returning a verdict in favor of plaintiff.

■■ Complaint is made of a certain instruction in regard to the measure of damages given by the trial court. It is admitted by defendant that most of the instruction upon the giving of which error is predicated was correct, but it is contended that prejudicial error was committed by the inclusion of the language:

" . . . The bodily pain and mental suffering . . . that is reasonably certain from the evidence he will endure hereafter as a result of his physical injuries."

The argument is that while past pain and suffering need not be specially pleaded, yet if a recovery is sought for future pain and suffering it must be so pleaded. It is also contended that the instruction assumes matters not in evidence; it being claimed that there is no testimony by the plaintiff that he ever suffered any bodily pain at the time or did suffer any thereafter. In *United Verde Copper Co.* v. *Wiley,* 20 Ariz. 525, 183 Pac. 737, 738, this court said:

"No allegation as of special damage is necessary to recover for mental suffering, where this is allowed as an element of damages, since such suffering is inseparably connected with and attends personal injuries. Pain and suffering need not be specially pleaded, where inseparable from, and a natural consequence of, the physical injury."

While we did not expressly state that this rule applied to future as well as past suffering, we think it but logical that such is the rule. When the injuries are such that pain and suffering are a natural and probable consequence thereof, we think the mere pleading of the injury is sufficient to allow proof of the pain and suffering. It is, however, necessary to show by the evidence either that the pain and suffering actually did exist, or that the injuries were of such a nature that it would presumably follow therefrom. *Muskogee Electric Traction Co.* v. *Doss,* 59 Okl. 234, 158 Pac. 896.

We have examined the record in regard to this point. The only medical witness who testified, Dr. Wiley, went into the condition of the plaintiff very fully, both as to what it was at the time of the accident, what it was at the time of the trial, and its probable future course. We think the jury was justified in assuming from Dr. Wiley's testimony that the plaintiff had necessarily suffered a great deal of pain as the result of the injury, and that such suffer-

ing would continue for an indefinite time after the trial. Such being the case, the instruction was not erroneous.

It is also suggested by defendant that the court failed to submit to the jury the question of whether plaintiff had assumed the risk of the defective condition of the stairway. It is sufficient to say that assumption of risk was not pleaded as a defense to the action, nor does it appear that any instruction on this point was asked by defendant. He is not, therefore, in a position to raise the defense for the first time in this court. Contributory negligence was pleaded, but no assignment of error is predicated upon that issue.

The last assignment of error which we consider is that the verdict of the jury was a result of passion and prejudice and excessive in amount. The evidence showed that at the time of his injury plaintiff was a brakeman in the employ of the Santa Fe Railroad earning on the average of $160 per month. He was at the time of trial 63 years of age, and his life expectancy was 12.26 years. He was not able to return to work at all for more than 25 months, and was then forced on account of his physical condition resulting from the accident to accept a job which paid only $71 per month. His actual loss of earning during the time he was unable to do any work was in excess of $4,000, and his loss from reduced wages from the time he could return to work up to the time of trial would increase the loss in actual earnings to over $5,000. In addition thereto, as we have said, the jury was authorized to allow a reasonable amount of damages for pain and suffering. We cannot say, in view of these facts, that the verdict was so excessive that it showed passion and prejudice. It is suggested that the rule of damages stated in the case of

*Arizona Cotton Oil Co.* v. *Thompson,* 30 Ariz. 204, 245 Pac. 673, is applicable. That action was one under the old employer's liability law. Paragraphs 3153–3162, Rev. Stats. Ariz. 1913 (Civ. Code). That law was based upon an entirely different theory as to the amount of damages recoverable from that obtaining in the common-law action of negligence, and we think therefore the case cited is not in point.

This disposes of the questions raised by the appeal. There being no error in the trial below, the judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.