CITY OF COLUMBUS, et al. *v.* McILWAIN, et ux.

In Banc. Feb. 28, 1949.

(38 So. (2d) 921)

Sams & Jolly, for appellants.

474

**H. T. Carter,** for appellees.

478

Daniel, McKee & McDowell, for appellees.

482

**Roberds, J.**

T. G. McIlwain and wife Alma S. McIlwain sued the City of Columbus, and A. A. Marshall, superintendent of its water works department, to recover $7,500.00, the value of property destroyed by fire through the negligence of defendants, so asserted by plaintiffs, in not extinguishing the fire. There was a verdict against defendants in the sum of $2,500.00, upon which judgment was entered, from which the defendants appeal here.

Two main questions are involved on the appeal. Was actionable negligence shown? Was the City acting in a governmental, as distinguished from a proprietary, capacity?

On the first question, the declaration charges that defendants did "permit and allow a fire hydrant located in the vicinity" of the destroyed property "to get in such defective state of repair that said firemen were unable to get water from said hydrant after making a connection". In another place the declaration states "the said hydrant was out of a good state of repair and in a defective condition". The proof discloses that inside the fire hydrant was a pin, the function of which, when the pin was turned left and right, was to open and

close a valve inside the fire plug, which valve when open permitted the flow of water and when closed cut off such flow. On the occasion of this fire the water would not come on, and when the plug was gone into it was discovered that this pin was broken or "sheared" off, and would not open the valve and permit the water to flow from the hydrant. It is not claimed the City or any employee had actual knowledge of the defective condition of this pin. It is claimed only that the City and Marshall, superintendent of the water works, had constructive knowledge of such defective condition—that is, that the conditions were such that by reasonable prudence and diligence they should have known of the defective pin. The burden of establishing such negligence was, of course, upon the plaintiffs. Two witnesses were introduced on their behalf to do that. One was Sam Tucker. He lived near the fire plug. He said the plug was leaking before the fire; that he cut the grass from around the plug and "there was water in the little drain ditch. The grass was growing, made me have to cut a little more regular." But he also said that the street sprinkler got water from that plug "all along"; that while that was being done water would run out upon the ground. Asked if he saw the street sprinkler get water from the plug the morning before the fire occurred about noon the same day, he said he could not be certain but that his best recollection was it did.

The other witness was Lindsey Smith. He delivered ice to the residents of the vicinity of the hydrant and often passed it. When asked if he had noticed anything wrong with the plug he replied, "Well I knowed it was leaking by passing. I never did take much attention about the plug but I did know the plug was leaking because I seen the water running down the street"; that he did not know how long that had existed but thought perhaps three weeks. He said that the street sprinkler got water from that hydrant. On cross-examination he said he never saw any water running from the plug but

he saw it running down the street; that the ground was wet around the plug.

That was the evidence of plaintiffs on that question.

On behalf of defendants it was shown that this pin was on the inside of the hydrant; that no inspection, or examination, of the pin could have been made without partially dismantling and going inside the plug; that no one knew the nature of the defect until the hydrant was dismantled and the inside thereof examined after the fire; that this was a standard hydrant; that it had been put in new about a year previous to the fire; that the City of Columbus had 257 such hydrants; that the custom was to flush each one at least once a month; that the street sprinkler regularly obtained water from the hydrant with which to sprinkle the streets; that it did do that on the morning before this fire ocurred about noon; and when that was done a certain amount of water always leaked out at the hose connection, and sometimes, when the hose was defective, considerable water leaked therefrom, and that the ground was always wet around plugs from which the street water was obtained, and after obtaining the street water some water usually ran down the street. Marshall, superintendent of the water system, testified that he had been employed in the water department thirty-three years and that during that time he had never heard of but one other pin being broken or "sheared". He further testified that on the morning of the fire he stood right beside this hydrant while workmen under him were laying a new water line, and that there was nothing about the appearance of this plug, or the ground around it, to suggest to him anything was wrong; that when the hydrant was dismantled after the fire and careful examination made of the inside thereof it was found that the break or "shear" had been freshly made, and presumably occurred when the pin was given a sudden, hard turn in the haste to make quick connection of the fire hose with the hydrant. There was no contradiction of the evidence of defendants on this point

other than may be inferred from the testimony, as above set out, of the two witnesses for the plaintiff.

The evidence was not sufficient to charge constructive notice of the defective pin. The proof of plaintiffs shows only two things—first, that the ground was wet around the plug, and, second, that some water ran down the street. No one denies that the ground is wet around fire plugs from which the street sprinkler obtains water, nor from such plugs, on such occasions, water often runs down the street near the plug. Neither fact indicates there is anything wrong with the hydrant. But the facts upon which plaintiffs rely to show knowledge of a prior, causal defect disprove the conclusion. The trouble here was the water would not run from the plug. The proof of plaintiff showed water was running from the plug. That proof was to the effect that the valve was open. Here the defect was the valve would not open. All of this testimony, taken together, demonstrates clearly, in our opinion, the plaintiffs did not meet the burden resting upon them to show that defendants, by the exercise of reasonable care and diligence, should have known of the defect in this fire hydrant.

We might say no more and rest our decision upon the foregoing conclusion but some of the Judges are of the opinion that, because of the importance of this question to the public, we should decide whether or not, even if negligence were shown, the City would have been liable under the circumstances of this case. ██ █ Both sides admit that in extinguishing fires a municipality is acting in a governmental capacity and that in the operation of its water works its actions are of a proprietary nature. But it is contended by appellees that under the facts here it was acting in a dual capacity, and that the municipality is liable had negligence been shown on behalf of its servant in the water department, since the City of Columbus owns and operates the water system for a profit. Appellees rely upon City of Meridian v. Beeman, 175 Miss. 527, 166 Co. 757, 758. But that case

may be distinguished from this. There a policeman, driving an automobile, negligently ran over plaintiff. The duties of the policemen were both governmental and proprietary. It was uncertain in what capacity he was acting when the injury occurred, and, his acts being those of the city, it was uncertain in what capacity the city was acting. In that situation this Court, by a four to two decision, held it would not attempt the technical task of "unscrambling the mixed relations". In the case at bar there is no question that when the fire occurred the city was acting in a governmental capacity. Alexander v. City of Vicksburg, 68 Miss. 564, 10 So. 62; City of Hattiesburg v. Geigor, 118 Miss. 676, 79 So. 846.

In 38 Am. Jur., page 328, it is said: "It is well settled that a municipal corporation is not responsible for the destruction of property within its limits by a fire which it did not set out, merely because, through the negligence or other default of the corporation or its employees, the members of the fire department failed to extinguish the fire whether this failure is due to an insufficient supply of water, the interruption of the service during the course of a fire, the neglect or incompetence of the firemen, the defective condition of the fire apparatus, negligence in permitting fire hydrants to become clogged or defective, or the impassable condition of the streets preventing the fire apparatus from reaching the burning property. In such cases, it makes no difference that the municipality uses the same reservoirs and pipes for its fire service that it employs for the distribution of a public supply for domestic purposes, from which it derives a profit, since the two functions are clearly distinguishable". The cases cited fully sustain the announced rule.

Able counsel for appellees have cited no case holding a municipality liable for failure to extinguish a fire. If such liability existed, history records many disasterous fires which would have resulted in complete bankruptcy of the municipality.

Reversed and judgment here for appellants.