460 P.2d 995

Marion N. TANNER, a single woman,
Appellant,

v.

Paul D. LEVIE and Rae Levie, his wife,
Appellees.

No. 9667.

Supreme Court of Arizona.

In Banc.

Nov. 7, 1969.

Stark, Larson & Wood, by Rod Wood, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, by Nicholas Udall, Phoenix, for appellees.

STRUCKMEYER, Justice.

This suit was brought by Marion N. Tanner, as plaintiff in the court below, to recover the sum of $10,000.00 from Paul D. Levie, an attorney at law, on the theory of conversion or breach of trust. At the conclusion of plaintiff's case, the trial court granted a directed verdict in favor of Levie. As customary, in testing the record on appeal from the granting of a motion for directed verdict, the evidence and reasonable inferences therefrom will be viewed most strongly against the Levies and in the light most favorable to plaintiff, Tanner. Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 429 P.2d 442 (1967); Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967); Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803 (1959).

In December of 1963, plaintiff was the owner of certain lands in Yavapai County, Arizona, known as the Rancho Moana. The ranch was heavily encumbered by mortgages. The third mortgage was in default and was in the process of being foreclosed, trial of which was set for January 7, 1964. Plaintiff, being desirous of selling the ranch, entered into negotiations with

one Robert Anshen, an architect from San Francisco, California. On January 6, 1964, negotiations had proceeded to the point that the purchase price and other principal terms had been agreed upon. Plaintiff's attorney met with Anshen's attorney, defendant herein, both being from Phoenix, and an option was prepared which was signed early on the morning of January 7. It was understood that the third mortgage holder had agreed to withhold foreclosure if an option was entered into and exercised by Anshen.

The option in part provided:

" * * * It is understood and agreed that this option escrow is contingent upon settlement of the mortgage foreclosure action pending in the Superior Court of Yavapai County and reinstatement of the promissory note and realty mortgage in accordance with their terms and provisions and that the same shall be payable according to the terms of that promissory note dated May 1, 1961, and that inasmuch as the same has been accelerated it shall be reinstated or modified to the extent that the same shall not be accelerated by virtue of the foreclosure action."

After the execution of the option, two $5,000.00 checks drawn by Anshen and made payable to Guarantee Title and Trust Company were delivered to plaintiff's attorney to be placed in escrow subject to the contingency expressed in the option agreement above quoted. Plaintiff's attorney remained in Prescott in order to dispose of the foreclosure action and it was disposed of by an agreement for the entrance of judgment. Later an agreement signed on March 2, 1964, provided for the execution by plaintiff of a new note and mortgage on the same conditions as the former mortgage.

Pending the disposition of the mortgage foreclosure on the morning of January 7, 1964, plaintiff's attorney gave the two checks and the signed option to Levie who was returning to Phoenix shortly. It was understood that an escrow would be established by him and the money deposited that day. Levie agreed to establish the escrow and accepted the checks with that understanding.

However, when Levie arrived in Phoenix, he did not set up the escrow as agreed but instead placed the checks in his personal safe. When plaintiff's attorney learned that the escrow had not been set up, he contacted Levie who during the next sixty days gave him numerous excuses for not having done so; none of the reasons given included the fact that plaintiff had not complied with the quoted terms of the option.

All of the parties assumed that the option was in effect. Anshen visited the ranch on numerous occasions and plaintiff made no further attempts at a sale. In fact, Levie testified that had plaintiff attempted another sale, Anshen could have asserted his prior right. Anshen, however, did not exercise the option seemingly because of an adverse water report in an economic analysis of the development of the property for subdivision purposes. After sixty days Levie returned the two checks to Anshen even though plaintiff's attorney had made demand upon him for the checks and even though Levie had informed Anshen that in his opinion Anshen was legally bound to pay the $10,000.00 option price.

Anshen, thereafter, died in California and plaintiff instituted this action to recover the $10,000.00 from Levie.

The trial court took this view:

"I think that the evidence is uncontradicted that there was never any reinstatement of the note and mortgage. There was never any modification in the note and mortgage under the settlement which agreed to the foreclosure of the pending mortgage foreclosure action. There was the execution of a new note and mortgage which, although they bore the same terms as the previous note and mortgage, were not a reinstatement or modification. Since this is a condition precedent I don't think that as a matter of law you can say that although we did not meet the condition precedent we did something just as good

and, therefore, we are entitled to the money."

We think the court below was unduly technical in its interpretation of the option. "Modify" is defined in Webster's Third International Dictionary 4a as "to make minor changes in the form or structure of: alter without transforming." By entering into a new mortgage on the identical terms and conditions of the old, the latter was "altered without transforming" and was in every sense of the word modified consistent with the parties' intention as conveyed by the quoted provision of the option that the mortgage should not be accelerated.

Moreover, one of the mortgagees, Keith Gastineau, testified:

"Q As a matter of fact was your group, you and your group, interested in having Mrs. Tanner make the sale?

A Very much.

Q Why?

A Because we knew that we would have a better chance of getting our money.

Q Would it be fair to say that you would agree to modify your judgment so as to allow her to make any kind of conveyance?

A Yes."

It is clear that the mortgage holders would have cooperated with Anshen in order to consummate the proposed sale if Anshen objected to the form the reinstatement took.

Levie argues that by the plaintiff's attorney placing the two checks in his possession at Prescott, there was an attempt to make him an escrow agent for both parties and there can be no escrow agent here because there must not be a conflict of duties and responsibilities as an attorney. We are not of the view that there was a conflict of duties and responsibilities. Under the plaintiff's evidence delivery of the checks was completed by a transfer to plaintiff's attorney in Prescott. The entrustment to Levie for the purpose of transmission to Phoenix and establishment of the escrow was a simple act of agency in-

volving no conflict of duties because it was done for the purposes of consummating the transaction as desired by both parties. Were it intended otherwise, the checks would not have been delivered to plaintiff's attorney for the purpose of establishing an escrow.

Judgment reversed with an order granting plaintiff a new trial.

LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.

Note: JESSE A. UDALL, Chief Justice, having disqualified himself, did not participate in this decision.