537 P.2d 618

**Phillip R. BARNUM, dba Soundmaster Manufacturing Co., Appellant,**

v.

**RURAL FIRE PROTECTION COMPANY,**
a corporation, Appellee.

**No. I CA–CIV 2359.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 26, 1975.

Black, Robertshaw, Frederick, Copple & Wright, P. C. by Richard A. Black, Phoenix, for appellant.

Snell & Wilmer, by John J. Bouma, Daniel J. McAuliffe, Phoenix, for appellee.

## OPINION

FROEB, Judge.

This is an action by plaintiff (appellant) Phillip R. Barnum against defendant (appellee) Rural Fire Protection Company to recover damages sustained by Barnum's business in a fire started by an unknown party during the night of July 28, 1971. Our task is to determine the extent of liability, if any, of a private fire-fighting company which fights a fire when under no legal obligation to do so.

Barnum occupied rented space in a shopping center building located at 807 N. Scottsdale Road in an unincorporated area of Maricopa County, Arizona. The business was in the middle of five contiguous business stores which comprised a small shopping center. The northernmost business, where the fire broke out, was a carpet store. Barnum's business, Soundmaster

Manufacturing Co., involved the design, development, manufacture and sale of custom and production-type sound equipment. He also sold, at retail, tape recorders, microphones, guitars and comparable items. At the time of the fire the store contained an inventory of electronic equipment, including scopes, generators, voltage meters and amplification systems.

At 12:23 A.M., on July 29, 1971, Rural received an alarm reporting the fire at the shopping center and immediately responded with trucks, men and equipment. Barnum was advised of the fire by reason of a detection device he had installed in his store and arrived at the scene at approximately 12:35 A.M., right after Rural had begun fighting the fire.

The trial record contains a great amount of testimony concerning the progress of the fire and the manner in which it was fought by Rural. Barnum argued that Rural had ample water available, but negligently failed to supply it in sufficient quantities to the scene of the fire. Barnum also contended that Rural was negligent in refusing him permission to enter his store in order to personally carry out and thus salvage some of his equipment which was ultimately consumed by the blaze.

As for the claim of negligent fire-fighting, there was considerable testimony detailing the conduct of the firemen; the use of the fire trucks; the use of fire hoses, and the manner in which Rural dealt with the exigency at hand.

As for the claim that the firemen negligently denied Barnum access to his store, Barnum testified that there were no flames in his store until somewhere between 20 and 40 minutes after he arrived and that he could have entered to rescue some of his equipment and thus minimized his loss. There was other testimony that by the time he arrived the fire had spread beyond the carpet store into the common attic shared by the other four businesses, including his own; that there was smoke present in the store and water was being hosed in by the firemen, and that the canopy overhanging a common porch had given way. Barnum stated he did not enter his store because he was told not to due to the danger at hand by both a sheriff's deputy as well as Rural's firemen.

Following the close of plaintiff's evidence, Rural moved for a directed verdict, which was granted. From the judgment of the trial court against him, Barnum brings this appeal. Under the circumstances, the evidence and all reasonable inferences therefrom are viewed by us in the light most favorable to appellant. *Tanner v. Levie,* 105 Ariz. 149, 460 P.2d 995 (1969).

To constitute actionable negligence the alleged tort feasor must have owed a duty to the injured party, the breach of which proximately caused the injury in question. *Morris v. Ortiz,* 103 Ariz. 119, 437 P.2d 652 (1968). The determination of the existence of a duty, that is, whether the defendant stands in such a relation to the plaintiff that the law will impose upon him an obligation of a certain standard of conduct, is a question of law to be resolved solely by the court. *Glowacki v. A. J. Bayless Markets,* 76 Ariz. 295, 263 P.2d 799 (1953).

The legal relationships brought into being as the result of fire and its consequent damage have not prompted the courts to define special rules of liability. Instead, when liability is asserted, courts have inquired into the status of persons involved in the conflagration in deciding the extent and limits of duty. Where liability for careless fire-fighting or failure of fire protection is asserted, the alleged wrongdoer is usually a municipality or other public body. See, e. g., *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Steitz v. City of Beacon,* 295 N.Y. 51, 64 N.E.2d 704 (1945); *Motyka v. City of Amsterdam,* 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965); *Duran v. City of Tucson,* 20 Ariz.App. 22, 509 P.2d 1059 (1973).

■ Where public bodies have been involved, many of the early cases denied liability for the failure of fire protection on the basis of sovereign immunity. See, e. g., *City of Columbus v. McIlwain,* 205 Miss. 473, 38 So.2d 921 (1949); *Valevais v. City of New Bern,* 10 N.C.App. 215, 178 S.E.2d 109 (1970). Such cases furnish no precedent for us in view of the abrogation of sovereign immunity in Arizona. *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P.2d 107 (1963). Nonetheless, the removal of the defense of sovereign immunity did not create any new liability for a public body. *Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 199 ˙N. W.2d 158 (1972). Liability to an individual for damages will not arise where the public body owes a duty to the general public as a whole unless it is shown that it owes a specific duty to the individual. *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *Duran v. City of Tucson,* supra. What will bring into existence a duty to the individual will of course depend on the facts of each case:

> "Simply stated, there are situations where a government, or agency thereof, can by its conduct, narrow an obligation owing to the general public into a special duty to an individual, for the breach of which it is responsive in damages." *Massengill v. Yuma County,* 104 Ariz. 518, 523, 456 P.2d 376, 381.

Does the rule thus stated apply to Rural Fire Protection Company? The evidence shows that Rural is a private Arizona corporation organized for profit and not a department of a governmental body. It should also be noted that Rural is not a "volunteer fire company" such as may be organized in accordance with the provisions of A.R.S. §§ 9–1001 through 9–1008. Its business is to provide private fire department-type fire protection to municipal, industrial, commercial and residential customers who subscribe to and pay for the service. See, *Rural Fire Protection Co. v. Hepp,* 366 F.2d 355 (9th Cir. 1966). At its option Rural also responds to and fights fires where it has no contractual duty to do so. The corporation is the holder of a certificate of convenience and necessity issued by the Arizona Corporation Commission pursuant to A.R.S. § 40–281. The franchise gives Rural the exclusive right to provide private fire protection service in the franchised area to the exclusion of all others. It is entitled to offer fire protection service to subscribers for an annual charge approved by the Corporation Commission It is under no obligation to provide fire service to nonsubscribers, but should it a charge of 17 times the annual rate charged to subscribers is authorized by the Commission. Unlike a municipal water or fire protection department, it is under no legal obligation to render adequate service impartially and without discrimination to all members of the general public. See, for comparison, *Veach v. City of Phoenix,* 102 Ariz. 195, 427 P.2d 335 (1967). In this case, neither Barnum nor the owner of the shopping center was a subscriber to the services offered by Rural. ·Thus, Rural had no contractual obligation to respond to the fire or to fight it. It made no charge to Barnum for its efforts to extinguish the fire, though it was authorized to do so.

■ As a consequence, we conclude that Rural does not take on the status of a governmental unit or department thereof. Its characteristics are essentially private, although it possesses certain authority and powers arising out of a certificate of the Corporation Commission. Its duties and liabilities are those of an individual or private corporation. If Rural had no obligation to respond to or fight the fire, what then was its duty, if any, when it undertook to do so?

■ The duty of a volunteer who undertakes to act is expressed by Justice Cardozo in *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922):

> " . . . It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to

the duty of acting carefully, if he acts at all . . . ." 135 N.E. 275, 276.

The modern counterpart of the rule is set forth in Restatement 2d. of Torts, § 323:

"§ 323. Negligent Performance of Undertaking to Render Services

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

■ Tort liability under this rule arises wholly apart from a consideration of whether the volunteer is governmental or private, or from a consideration of the peculiar nature of the hazard involved, such as fire. It is, plainly, a rule which comes into play by reason of an affirmative undertaking by one who, under the circumstances, has no duty to act. The rule is sound, for it both encourages aid in an emergency by a volunteer as well as providing a person harmed with some measure of protection against well-meaning but haphazard conduct.[1]

Thus, in our analysis, we will assume, without deciding, that appellant presented to the trial court a prima facie showing that Rural failed to use reasonable care in the manner in which it fought the fire. We turn then to whether Rural either (a) increased the risk of harm to Barnum, or (b) the harm suffered by Barnum was due to his reliance upon Rural's action.

■ We may dispose of the first alternative with little difficulty. Clearly, Rural did not increase the risk of harm by coming to the fire. Indeed, if any conclusion is possible it is that the fire, unchecked, would have progressed faster and with more serious consequences had Rural not tried to put it out. The fact that it might have been fought with greater care does not mean that it increased the risk of harm to Barnum.

■ The second alternative is somewhat more difficult. Reliance in the context of § 323 connotes dependence. It bespeaks a voluntary choice of conduct by the person harmed. It infers that the person exercising it can decide between available alternatives.

Arizona has recognized the factor of reliance as a necessary element of recovery against a volunteer. See *Taylor v. Roosevelt Irrigation District*, 72 Ariz. 160, 232 P.2d 107 (1951). Appellant contends that reliance is not required in Arizona for lia-

---

1. Since apparently the common law rule was thought inadequate in its protection of the volunteer, in 1972 the Arizona Legislature altered the rule as to certain persons who come to the aid of others in an emergency by providing that their liability would be limited to acts of gross negligence. A.R.S. § 32–1471 reads as follows:

"32–1471. Physician and surgeon, nurse, ambulance attendant and driver, and any other person; emergency aid; nonliability

A physician or surgeon, or a registered nurse, graduate nurse, or a professional nurse as defined in § 32–1601, licensed to practice as such in this state or elsewhere, or a licensed ambulance attendant, driver or pilot as defined in § 41–1831, or any other person who renders emergency care at a public gathering or at the scene of an emergency occurrence gratuitously and in good faith shall not be liable for any civil or other damages as the result of any act or omission by such person rendering the emergency care, or as the result of any act or failure to act to provide or arrange for further medical treatment or care for the injured persons, unless such person, while rendering such emergency care, is guilty of gross negligence."

Counsel for Rural argues in the alternative that we hold the statute applicable to Rural in this case and that it is therefore liable only for gross negligence. In view of our opinion deciding the case under § 323 of Restatement 2d. of Torts, we decline to rule on this question though we find the language of the statute notably broad.

bility to arise, citing *Olsen v. Mading*, 45 Ariz. 423, 45 P.2d 23 (1935). In that case the plaintiff, a subtenant, suffered personal injuries as the result of a fall caused by a defective stairway on premises owned by defendant landlord. A tenant had previously discovered the unsafe condition and complained of it to the landlord. Though under no duty to do so, the landlord made repairs, but failed to correct the defect. The Supreme Court affirmed a jury determination that the landlord was liable to the tenant for his failure to use reasonable care in making the repair once he had undertaken to do so. We find no conflict in this case with our decision here, as *Olsen* was decided on the basis of landlord-tenant law, thus recognizing a status between the parties not present here. The question of the plaintiff's reliance was not material, nor was the question of whether the landlord increased the risk of harm in making the repairs.

■ Appellant also places importance upon a line of cases in which insurance carriers were held liable for negligent performance of voluntary and gratuitous inspection of the insured's property or premises and in which the element of reliance was not necessary to recovery. E. g., *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964); *Corson v. Liberty Mutual Ins. Co.*, 110 N.H. 210, 265 A.2d 315 (1970); *American Mutual Liability Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 48 Wis.2d 305, 179 N.W.2d 864 (1970). We find that the cited cases are not persuasive since they represent a minority view (see W. Prosser, Law of Torts, P. 347, note 19, 4th Ed. 1971); were in some instances decided by divided courts, and, in any event, are contrary to the decision in *Taylor v. Roosevelt Irrigation District*, supra, in which the Arizona Supreme Court set forth reliance as a necessary element for recovery against a vol-

unteer. Moreover, the cases were not decided in accordance with § 323 of Restatement 2d. of Torts, which Arizona courts will follow in the absence of authority to the contrary. See, *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958).

■ Was there, then, reliance by Barnum upon the conduct of Rural? There is no evidence in the record which would so indicate. It is true that had there been others available whom Barnum might have called to fight the fire and he in fact declined to do so on the basis of Rural's conduct, then the element of reliance would be supplied. See, e. g., *Lacey v. United States*, 98 F.Supp. 219 (D.Mass.1951) (discouraging other potential rescuers). There is, however, no evidence of such reliance here.

Can the element of reliance be found in the act of preventing Barnum from entering his store during the course of the fire? Barnum contends that had he been allowed to rescue some of his equipment and inventory, his losses would have been minimized. While we do not seek to weigh the evidence, we note that his own evidence shows that when he arrived at the fire scene firemen were already pouring water into his store; the sidewalk portion of the porch had partially collapsed presenting a danger to anyone standing there; safe ingress to the burning building could be made only after the porch canopy was knocked down so as to prevent falling embers; and one of Barnum's employees, also at the scene, testified that he did not want to enter the store to salvage goods because he did not want to be burned. The evidence further indicates that the command to Barnum not to enter was made by a deputy sheriff at the scene who directed him not to go in unless the firemen consented.[2] They also refused him permission.

2. The authority for such a directive is found at A.R.S. § 13-944, which reads:
"§ 13-944. Disobedience or interference with officer or fireman at fire; punishment

A person who, at the burning of a building, disobeys the lawful orders of a peace officer or fireman, or offers resistance to, or interferes with the lawful efforts of a fireman or company of firemen to extinguish

Under these circumstances, we have no difficulty in deciding that the duty of a volunteer to use reasonable care in fighting fire justifies efforts to prevent others from heedlessly becoming engulfed in it. Though we do not go so far as to state that a volunteer under such circumstances has a mandatory duty in this regard, we do find that when lawfully made, as in this case, it cannot be advanced as an act of reliance under § 323 of Restatement 2d. of Torts by the person by whom harm is later suffered. As we have pointed out, the element of reliance implies willed conduct, not conduct or inaction brought about by force of law.

Finally, we find no merit to appellant's contention that there was a triable issue of negligence concerning the issuance of the order refusing him entry to his store. He argues that the evidence would permit a finding that the fire had not reached his business premises and that he could have rescued some of his property in safety. Though such might arguably have been the case, we hold that there is no duty of care imposed upon a sheriff or fireman making a lawful no-entry order pursuant to A.R.S. § 13–944. Thus, the act of making such an order, standing by itself, will not sustain an action for negligence.

In conclusion, we find in these facts no basis for recovery against Rural even assuming that the evidence made out a prima facie case of its failure to exercise reasonable care in fighting the fire. Were the required showing of reliance present, we have no way of knowing whether the efforts of Rural in dealing with the blaze would have been found negligent by the trier of fact or that the resulting carelessness would have been found to have been the proximate cause of Barnum's damage. The evidence on this point, in plaintiff's case alone, was certainly conflicting. The

issue of whether the damage to Barnum's property was the result of fire beyond control or of negligent efforts to extinguish it remains one for speculation.

For the reasons stated, we find that the trial court correctly directed the verdict on the issue of liability in favor of appellee.

Affirmed.

OGG, P. J., and STEVENS, J., concurring.

---

the fire, or engages in disorderly conduct calculated to prevent the fire from being extinguished, or who forbids, prevents or dissuades others from assisting in extinguishing the fire, is guilty of a misdemeanor."